CV 17 - 6225

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FILED
CLERK

2017 OCT 25 PM 1: 51

------------------------------------------------------ x

ALPHA FOUNDERS HOLDING, LLC,

                Plaintiff,

    -against-

MAGELLAN HEALTH, INC.,

           Defendant.

No. _____

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

COMPLAINT   **IRIZARRY, CH.J.**

**JURY TRIAL DEMANDED**   REYES, M.J.

------------------------------------------------------ x

       Plaintiff Alpha Founders Holding, LLC ("Founders") alleges, upon knowledge as to itself

and upon information and belief as to all other matters, as follows:

## NATURE OF THIS ACTION

    1.    This action arises out of the misconduct and breaches of duty of Magellan Health,

Inc. ("Magellan") in seeking to use its status as controlling stockholder of AlphaCare Holdings,

Inc. ("AlphaCare") to force AlphaCare to merge with a Magellan affiliate in a transaction that

provides no meaningful value to AlphaCare and simply enriches Magellan at the expense of

Founders, a New York company representing AlphaCare's founders and minority stockholders.

    2.    Magellan intends to use its control over AlphaCare to approve this transaction and

effectuate a merger in which AlphaCare would effectively cease to exist and be subsumed into a

wholly owned subsidiary of Magellan, forcing out the minority stockholders who founded and

built AlphaCare's business.

    3.    As AlphaCare's controlling stockholder, Magellan owes Founders a fiduciary duty

to ensure that any transaction with a Magellan affiliate is consummated through a process and on

financial terms that are entirely fair to Founders.

4.    Neither the process nor the financial terms of the proposed transaction are remotely fair. To the contrary, based on Magellan's own financial analysis, the transaction will result in a transfer of value from Founders to Magellan of approximately $10 million. And Magellan has attempted to force through this transaction on a highly-expedited time frame without any procedural protections for Founders and without providing any meaningful information about the transaction to Founders or its designees on AlphaCare's board.

5.    Founders will be irreparably harmed if Magellan is permitted to proceed with this self-interested and wrongful transaction. Founders seeks an injunction to prevent Magellan from consummating the transaction.

## THE PARTIES

6.    Founders is a New York limited liability company with its principal place of business in Brooklyn.

7.    Magellan is a Delaware corporation with its principal place of business in Scottsdale, Arizona.

8.    Non-party AlphaCare is a Delaware corporation with its principal place of business in Brooklyn. It is the sole stockholder of AlphaCare of New York ("AlphaCare NY").

## JURISDICTION AND VENUE

9.    The Court has personal jurisdiction over Magellan under CPLR §§ 301 and 302 because (i) Magellan transacts business in this judicial district; (ii) the claims asserted in this action directly relate to or arise from the Magellan's contacts with this judicial district; and (iii) the exercise of jurisdiction over Magellan comports with the requirements of the due process clause of the Fourteenth Amendment of the United States Constitution.

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C.
§ 1332(a) because this is an action between citizens of different states and the matter in
controversy exceeds $75,000.

11.    Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391
because a substantial part of the events giving rise to the claims occurred in this judicial district.

### FACTUAL BACKGROUND

12.    In 2012, a group of Brooklyn-based businessmen established AlphaCare NY to
provide long-term health care services to poor, chronically ill or disabled New Yorkers, and
formed a limited liability company named, AlphaCare Holdings, LLC ("AlphaCare
Holdings")—AlphaCare's corporate predecessor—which owned all of AlphaCare NY's stock.

13.    AlphaCare NY obtained a New York HMO license and began enrolling members
in August 2013.  It entered into a contract with New York State to provide managed long term
care services, obtained licenses to participate in New York's Medicare Advantage Program, and
was selected to participate in the State Department of Health's Fully Integrated Duals Advantage
Demonstration Program.

14.    AlphaCare NY was a success.  In September of 2014, AlphaCare NY received an
offer to purchase 10,000 shares of its common stock for $2.25 million, indicating a total
valuation of $15.4 million.  AlphaCare NY's success began to draw notice from major players in
the insurance industry, including defendant Magellan, a national healthcare management
company based in Arizona.

15.    In February of 2013, Magellan approached AlphaCare NY regarding a possible
investment.  The parties ultimately struck a deal: AlphaCare NY would receive an injection of
capital and Magellan would share its expertise in operating healthcare providers, while Magellan
would gain a preferred equity position in the fast-growing company.

3

16.    Over the next several months, Magellan made a series of investments in AlphaCare, ultimately acquiring common and preferred stock giving Magellan control of the company.

17.    In late 2013, Magellan and AlphaCare's founders entered into an agreement restructuring the company and formalizing Magellan's control.  As a result of that agreement, at the end of 2013, AlphaCare NY was merged into and became a wholly-owned subsidiary of AlphaCare.  At that point, Magellan became AlphaCare's controlling stockholder and AlphaCare NY's founders formed Founders to hold their minority interest in AlphaCare.

18.    This arrangement gave Magellan control over the company, including the ability to appoint three of AlphaCare's five directors.  Founders retained the right to appoint the remaining two directors so long as owns at least 10% of the total issued and outstanding common stock of the company.  Founders maintains the right to select one board seat so long as it holds less than 10% but at least 5% of the issued and outstanding common stock.

19.    In a series of transactions between, Magellan purchased additional preferred shares of AlphaCare, which are convertible into common shares.  As of today, Founders holds 85.4% of AlphaCare's 68,453 common shares, while Magellan holds the remaining common shares and preferred shares that are convertible into 294,249 common shares.

## MAGELLAN ANNOUNCES PLANS TO ACQUIRE SWH

20.    On July 13, 2017, Magellan announced plans to acquire Senior Whole Health ("SWH"), a healthcare company providing Medicare and Medicaid duel-eligible benefits to members in Massachusetts and New York.  SWH operates in New York through a wholly owned subsidiary, Senior Whole Health New York, Inc. ("SWH NY").  According to the Magellan's announcement, Magellan was to acquire SWH for approximately $400 million in cash and Magellan anticipated paying the purchase price from the proceeds of new debt offerings.

4

21.    In its press release announcing its acquisition of SHW, Magellan reported that it expected the transaction to close "by the end of the first quarter of 2018."

## MAGELLAN'S APPOINTED DIRECTORS APPROVE A MERGER OF ALPHACARE NY AND SWH NY THAT PROVIDES NO BENEFIT TO ALPHACARE OR ITS STOCKHOLDERS

22.    On the afternoon of Friday, September 22, 2017, Magellan provided the directors of AlphaCare and AlphaCare NY with notice of the third quarter board meetings for each company to be held on September 27, 2017.  AlphaCare and AlphaCare NY have the same five directors—three Magellan designees and two Founders designees—and typically hold their board meetings on the same day.

23.    With its notice of the third quarter meeting, Magellan distributed board materials, in which its disclosed for the first time plans to merge AlphaCare NY into SWH's New York subsidiary, SWH NY, with *two million* new common shares of AlphaCare stock being issued to Magellan's wholly owned subsidiary SWH and Founders' designees to the boards of both AlphaCare NY and AlphaCare losing their seats.  This was the first time Magellan had disclosed its plans to merger AlphaCare NY and SWH NY.  The proposed merger is contingent on the closing of Magellan's acquisition of SWH, which was then scheduled to close in early 2018.

24.    As proposed, the merger—and the issuance of additional shares to SWH—effectively transfers AlphaCare equity from Founders to Magellan for no meaningful consideration and no identified legitimate business purpose:

25.    The board materials Magellan distributed stated that the merger of AlphaCare NY and SWH NY was being proposed "for regulatory and operational reasons," but provided no further explanation for the proposed transaction nor any reason why a merger would be in the best interests of AlphaCare NY, AlphaCare, or AlphaCare stockholders.

5

26.    At the board meeting on September 27, 2017, AlphaCare NY's board was asked to vote on a resolution approving the merger.  In other words, with only a few days' notice and virtually no information about the transaction, AlphaCare NY's board was asked to approve a transaction that would effectively end the company's existence and wipe out the equity interests of the company's founders.

27.    The resolution to approve the merger passed with Magellan's three board designees voting in favor.  Founders' designees abstained from the vote because they believed they lacked sufficient information to cast an informed vote on the proposed transaction.  At that meeting, AlphaCare NY's board also approved the retention of Mercer Capital as financial advisor to provide a financial analysis of the proposed transaction.

## MAGELLAN CALLS A SPECIAL MEETING OF ALPHACARE'S BOARD TO APPROVE THE MERGER

28.    At 4:52 p.m. on Friday, October 20, 2017, Magellan sent AlphaCare's directors notice of a special meeting of the boards of both AlphaCare and AlphaCare NY to be held on Monday, October 23, to authorize AlphaCare NY to execute a merger agreement with SWH NY and to take other actions necessary to effectuate the merger, issue two million new AlphaCare shares to SWH—which will be wholly owned by Magellan at the time of the merger—and to remove Founders' designees from the boards of both AlphaCare and AlphaCare NY. .

29.    As Magellan knows well, one of Founders' board designees observes the Jewish Sabbath beginning at sundown on Friday evening.  As a result, Magellan knew that he would be unable to review materials emailed to him on Friday evening until sundown on Saturday, leaving him little more than a day to review the materials before being asked to vote on the transaction. Magellan provided no explanation why the vote needed to occur on such short notice, given that

ny-1302617

the materials provided suggested that the merger would not be consummated until after Magellan's acquisition of SWH closed in early 2018.

30.     The board materials Magellan sent to AlphaCare's directors again included no information about any benefit that would be provided to AlphaCare from engaging in this merger.  The materials simply state that the merger will permit Magellan to consolidate its New York "footprint."  While this consolidation may provide strategic benefits to Magellan, there is no indication that it will benefit AlphaCare or its minority stockholders.

31.     The materials do make clear, however, that the proposed merger would essentially wipe out Founders' interest in the company—and result in a massive transfer of value from Founders to Magellan—without identifying any meaningful benefit for Founders.

32.     Founders' interest in the combined company would be reduced from 16.1% to 2.5%, with the remaining interest being held by Magellan and its wholly owned subsidiary, SWH.

33.     Moreover, according to the financial analysis that Magellan commissioned, the pre-merger value of AlphaCare is approximately $88 million, while the value of the combined company will be approximately $188 million.  Thus, as a result of the transaction, the value of Founders' shares will fall from over $14 million (i.e. 16.1% of $88 million) to under $5 million (i.e. 2.5% of $188 million), resulting in a transfer of value from Founders to Magellan of approximately $10 million.

34.     At the Special Meeting held on October 23, 2017, Founders' designees requested additional time and information to assess the proposed merger.  Magellan agreed to adjourn the meeting for two days, until October 25, 2017.  Magellan also agreed to provide Founders'

ny-1302617

designees with additional information, but has not, as yet, done so.  Magellan has stated that it intends to direct its designees to approve the merger at the special meeting on October 25, 2017.

35.    While the materials that Magellan sent the directors state that the proposed merger of AlphaCare NY and SWH NY will be completed following the closing of Magellan's acquisition of SWH, which is "expected to close in 1Q18," Magellan has recently announced publicly that its has received all necessary regulatory approvals for its acquisition of SWH, meaning that the acquisition, and the proposed merger of AlphaCare NY and SWH NY, could close at any time.

## FIRST CAUSE OF ACTION
(Breach of Fiduciary Duty Against Magellan)

36.    Founders repeats and realleges the allegations set forth in paragraphs 1 through 35, as if fully set forth herein.

37.    As AlphaCare's controlling stockholder, Magellan owes Founders fiduciary duties of loyalty and good faith.

38.    As a minority stockholder in a controlled corporation, Founders is entitled to assert a direct claim for breach of fiduciary duty against the controller stockholder, Magellan.

39.    When engaging in a self-interested transaction, like the proposed merger of AlphaCare with a Magellan affiliate, Magellan is obligated to ensure that the transaction is entirely fair—both procedurally and financially—to Founders.

40.    The process through which Magellan is attempting to force the merger of AlphaCare NY with SWH NY, and the related steps to remove Founders' designees from the board—is unfair to Founders.

41.    The financial terms of the proposed merger are unfair to Founders.

ny-1302617

42.     Magellan's conduct in seeking to force through a merger of AlphaCare and SWH breached Magellan's duties of good faith and loyalty to Founders.

**WHEREFORE**, Founders requests the following relief:

A.      A preliminary and permanent injunction, enjoining Magellan from completing a merger of AlphaCare NY and SWH NY on the terms currently proposed;

B.      In the alternative, an award of monetary damages, in an amount to be determined at trial, but not less than $10 million.

C.      Any further relief this Court deems appropriate.

Dated: New York, New York          MORRISON & FOERSTER LLP
       October 25, 2017          By: _____
                              James J. Beha II
                              Christina L. Golden
                              250 West 55th Street
                              New York, New York 10019
                              (212) 468-8000

                              *Attorneys for Alpha Founders Holding, LLC*