UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALPHA FOUNDERS HOLDING, LLC,

                   Plaintiff,

    vs.

MAGELLAN HEALTH, INC.,

                 Defendant.

No. CV 17 - 6225

ORAL ARGUMENT REQUESTED

IRIZARRY, CH.J.

REYES, M.J.

FILED
CLERK
2017 OCT 25 PM 1:5
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**MEMORANDUM OF LAW IN SUPPORT OF
ALPHA FOUNDERS HOLDING, LLC'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000

*Attorneys for Alpha Founders Holding, LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1
BACKGROUND ....................................................................................................................... 2
    A.    AlphaCare's Beginnings ................................................................................... 2
    B.    Magellan Gains Control of AlphaCare. ........................................................... 2
    C.    Magellan Seeks to Use Its Control to Force a Self-Interested Transaction between AlphaCare and a Magellan-Controlled Entity. ................................. 3
ARGUMENT ............................................................................................................................. 6
I.    RELEVANT LEGAL STANDARD ............................................................................... 6
    A.    Standard for Injunctive Relief .......................................................................... 6
    B.    Standard for the Underlying Breach of Fiduciary Duty Claim ........................ 7
II.    FOUNDERS HAS MET ITS BURDEN TO OBTAIN INJUNCTIVE RELIEF. .............. 7
    A.    Founders Is Likely to Succeed on the Merits of Its Claims. ........................... 7
    B.    Founders Will Suffer Irreparable Harm in the Absence of Injunctive Relief. ............................................................................................................... 9
    C.    The Balance of Hardships and Public Interest Weigh in Founders' Favor. ......... 10
CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Insured Mort. Investors v. CRI, Inc.*,
  1990 U.S. Dist. LEXIS 15787 (S.D.N.Y. Nov. 26, 1990) ........................................................ 11

*Am. Mining Corp. v Theriault*,
  51 A.3d 1213 (Del. 2012) .......................................................................................................... 8

*ATR-Kim Eng Fin. Corp. v. Araneta*,
  C.A. No. 489-N, 2006 WL 3783520 (Del. Ch. Dec. 21, 2006) ............................................ 9, 10

*Bank of N.Y. Co. v. Ne. Bancorp, Inc.*,
  9 F.3d 1065 (2d Cir. 1993) ...................................................................................................... 11

*Consol. Gold Fields PLC v. Anglo Am. Corp. of S Africa Ltd.*,
  698 F.Supp. 487, *aff'd in part and rev'd on other grounds*, 871 F.2d 252 (2d
  Cir.) .......................................................................................................................................... 11

*Consol. Gold Fields PLC v. Minorco, S. A.*,
  871 F.2d 252 (2d Cir.), *amended on other grounds*, 890 F.2d 569 (2d Cir.
  1989) ........................................................................................................................................ 11

*In re Del Monte Foods Co. S'holders Litig.*,
  25 A.3d 813 (Del. Ch. 2011) ................................................................................................... 12

*Greenlight Cap., L.P. v. Apple, Inc.*,
  Nos. 13 Civ. 900(RJS), 13 Civ. 976(RJS). 2013 WL 646547 (S.D.N.Y. Feb.
  22, 2013) .......................................................................................................................... 7, 9, 11

*Mony Grp., Inc. v. Highfields Cap. Mgmt., L.P.*,
  368 F.3d 138 (2d Cir. 2004) ...................................................................................................... 7

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
  817 A.2d 149 (Del. 2002) .......................................................................................................... 9

*Pell v. Kill*,
  135 A.3d 764 (Del. Ch. 2016) ................................................................................................. 10

*Reis v. Hazlett Strip-Casting Corp.*,
  28 A.3d 442 (Del. Ch. 2011) ..................................................................................................... 8

*Sonesta Int'l Hotels Corp. v. Wellington Assoc.*,
  483 F.2d 247 (2d Cir. 1973) ...................................................................................................... 8

ny-1302907

*Sterling v. Mayflower Hotel Corp.*,
   93 A.2d 107 (Del.1952) ..................................................................................................9

*Tom Doherty Assocs., Inc. v. Saba Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995)..............................................................................................10

*Walton v. Morgan Stanley & Co.*,
   623 F.2d 796 (2d Cir. 1980)............................................................................................8

## INTRODUCTION

This action arises out of the misconduct and breaches of duty of Magellan in seeking to use its status as AlphaCare's controlling stockholder to force AlphaCare to merge with a Magellan affiliate in a transaction that provides no meaningful value to AlphaCare and simply enriches Magellan at the expense of Founders, a New York company representing AlphaCare's founders and minority stockholders.[1] Magellan intends to use its control over AlphaCare to approve this transaction and effectuate a merger in which AlphaCare would effectively cease to exist and be subsumed into a wholly owned subsidiary of Magellan, forcing out the minority stockholders who founded and built AlphaCare's business.

As AlphaCare's controlling stockholder, Magellan owes Founders a fiduciary duty to ensure that any transaction with a Magellan affiliate is consummated through a process and on financial terms that are entirely fair to Founders. Neither the process nor the financial terms of the proposed transaction are remotely fair. To the contrary, based on Magellan's own financial analysis, the transaction will result in a transfer of value from Founders to Magellan of approximately $10 million. And Magellan has attempted to force through this transaction on a highly-expedited time frame without any procedural protections for Founders and without providing any meaningful information about the transaction to Founders or its designees on AlphaCare's board.

Founders will be irreparably harmed if Magellan is permitted to proceed with this self-interested and wrongful transaction. Founders seeks an injunction to prevent Magellan from consummating the transaction. Accordingly, Founders brings this motion seeking injunctive

---

[1] In this memorandum, we refer to AlphaCare Holdings, Inc. as "AlphaCare;" to AlphaCare of New York, Inc. as "AlphaCare NY;" to defendant Magellan Health, Inc. (formerly known as Magellan Behavioral Health, Inc.) as "Magellan;" and to plaintiff Alpha Founders Holding, LLC as "Founders." References to "Ex. __" are to exhibits to the Declaration of James J. Beha, II filed contemporaneously herewith. References to "Compl. ¶__" are to the Complaint.

relief to preserve the status quo and prevent the irreparable harm it will face if Magellan is permitted to consummate this unfair merger in violation of Magellan's fiduciary duties.

## BACKGROUND

### A.   AlphaCare's Beginnings

In 2012, a group of Brooklyn-based businessmen established AlphaCare NY to provide long-term health care services to poor, chronically ill or disabled New Yorkers, and formed a limited liability company named, AlphaCare Holdings, LLC ("AlphaCare Holdings") that owned all of AlphaCare NY's stock. (Compl. ¶ 12.)

AlphaCare NY obtained a New York HMO license and began enrolling members in August 2013. (Compl. ¶ 13.) It entered into a contract with New York State to provide managed long term care services, obtained licenses to participate in New York's Medicare Advantage Program, and was selected to participate in the State Department of Health's Fully Integrated Duals Advantage Demonstration Program. (*Id.*)

### B.   Magellan Gains Control of AlphaCare.

In February of 2013, Magellan approached AlphaCare NY regarding a possible investment. The parties ultimately struck a deal: AlphaCare NY would receive an injection of capital and Magellan would share its expertise in operating healthcare providers, while Magellan would gain a preferred equity position in the fast-growing company. (Compl. ¶ 15.)

Over the next several months, Magellan made a series of investments in AlphaCare, ultimately acquiring a common and preferred stock giving Magellan control of the company. (Compl. ¶ 16.)

In late 2013, Magellan and AlphaCare's founders entered into an agreement restructuring the company and formalizing Magellan's control. As a result of that agreement, at the end of 2013, AlphaCare NY was merged into and became a wholly-owned subsidiary of AlphaCare. At

-2-

that point, Magellan became AlphaCare's controlling stockholder and AlphaCare NY's founders formed Founders to hold their minority interest in AlphaCare. (Compl. ¶ 17.) This arrangement gave Magellan control over the company, including the ability to appoint three of AlphaCare's five directors. Founders retained the right to appoint the remaining two directors. In a series of transactions between, Magellan purchased additional preferred shares of AlphaCare, which are convertible into common shares. As of today, Founders holds 85.4% of AlphaCare's 68,453 common shares, while Magellan holds the remaining common shares and preferred shares that are convertible into 294,249 common shares. (Compl. ¶ 19.)

As part of its investment in AlphaCare, on or about December 31, 2013 Magellan, Founders and AlphaCare, Inc. executed a Stockholder Agreement setting out each party's rights and obligations. (Ex. F.) As part of the Stockholder Agreement, Magellan has the right to designate three members to the board of directors and Founders has the right to designate two directors. Founders' board designation rights remain intact so long as Founders owns at least 10% of the total issued and outstanding common stock of the company. (Ex. F, § 1.2(b).) Founders maintains the right to select one board seat so long as it holds less than 10% but at least 5% of the issued and outstanding common stock. (*Id.*)

### C. Magellan Seeks to Use Its Control to Force a Self-Interested Transaction between AlphaCare and a Magellan-Controlled Entity.

Beginning in the summer of 2017, Magellan, as the controlling stockholder of AlphaCare undertook actions to its own benefit to the detriment of Founders – the minority stockholders.

On July 13, 2017, Magellan announced plans to acquire Senior Whole Health ("SWH"), a healthcare company providing Medicare and Medicaid duel-eligible benefits to members in Massachusetts and New York. (Ex. A.) According to the announcement, Magellan was to

acquire SWH for approximately $400 million cash and Magellan anticipated paying the purchase price from the proceeds of new debt offerings. (Ex. A.)

Magellan then took a second step to consolidate its control of AlphaCare NY and its valuable services by forcing a merger between AlphaCare NY and SWH's New York subsidiary, "SWH NY." (Ex. B; Ex. C.) SWH provides services similar to those of AlphaCare NY, resulting in a valuable, sizable entity over which Magellan exercises total control. Magellan cannot deny that these are related transactions.

On October 9, 2017, Magellan announced that it had received all regulatory approvals for its agreement to acquire SWH, which it expected to close on or before December 31, 2017. (Ex. D.)

On Friday, October 20, 2017 at approximately 4:52 p.m., Magellan circulated a notice of special meeting of AlphaCare NY and AlphaCare to be held on Monday, October 23, 2017 beginning at 2:30 p.m. (Ex. G.) According to that notice, the board of AlphaCare NY was to consider whether to "[a]uthorize and direct the company to execute the" merger agreement with SWH and to "[r]ecommend to the sole shareholder of the company, AlphaCare Holdings, a reduction in the number of directors of AlphaCare of New York, Inc. from five (5) to three (3)." (Ex. E.) The board of AlphaCare was to consider approval of an amendment to its charter, an increase in the size of its board, issuance of additional common stock to effectuate the merger with SWH, approval of a merger, restructuring of the board of its subsidiary and other matters. (Ex. E.) Lastly, the meeting was called to consider authorization of the written consent effecting the merger between AlphaCare NY and SWH NY. (*Id.*)

The proposed AlphaCare board resolutions include, among other things, the approval of a merger between AlphaCare NY and SWH NY, "resulting in the issuance of 2,000,000 shares of"

AlphaCare common stock valued at $50 per share to SWH, which will, at the time of the merger, be a wholly owned subsidiary of Magellan. (Ex. H.) Following this issuance, Founders' holdings of AlphaCare will be reduced from 16.1% to just 2.5% resulting in the loss of its board designation rights. (Ex. I.) In addition, the board resolutions contemplate the restructuring of the boards of directors of both AlphaCare and AlphaCare NY. (Ex. H.) Following this restructuring, the AlphaCare board will increase from five to ten directors. (Ex. H.) The five new directors have been pre-selected by Magellan, which will now control at least eight of the ten board seats. (Ex. H; Ex. J.) The board of AlphaCare NY will be reduced from five to three directors with the Founders' directors being removed from the board. (Ex. H.) The resolutions further provide that the board of AlphaCare, "on behalf of the Corporation as the sole shareholder of AlphaCare Sub" approves the merger between AlphaCare NY and SWH NY. (*Id.*) The resolutions provide for the specific approval of this merger by the Magellan board-designees. (*Id.*)

On Monday, October 23, 2017, the joint board meeting was held. (Compl. ¶¶ 32-34.) The meeting was adjourned until Wednesday, October 25 at which point the boards will reconsider the above matters. (*Id.*) Following this meeting, the mergers could close imminently.

According to a financial analysis Magellan commissioned, Founders' interest in the combined company would be reduced from 16.1% to 2.5%, with the remaining interest being held by Magellan and its wholly owned subsidiary, SWH. (Compl. ¶ 32.) Moreover, according to the financial analysis that Magellan commissioned, the pre-merger value of AlphaCare is approximately $88 million, while the value of the combined company will be approximately $188 million. (Compl. ¶ 33.) Thus, as a result of the transaction, the value of Founders' shares will fall from over $14 million (i.e. 16.1% of $88 million) to under $5 million (i.e. 2.5% of $188

million), resulting in a transfer of value from Founders to Magellan of approximately $10 million.

Given Magellan's recent public announcement that it has received all necessary regulatory approvals for its acquisition of SWH, that transaction, and the proposed merger of AlphaCare NY and SWH NY could close at any time.

## ARGUMENT

### I. RELEVANT LEGAL STANDARD

#### A. Standard for Injunctive Relief

"'A plaintiff seeking a preliminary injunction must establish [ (1) ] that he is likely to succeed on the merits, [ (2) ] that he is likely to suffer irreparable harm in the absence of preliminary relief, [ (3) ] that the balance of equities tips in his favor, and [ (4) ] that an injunction is in the public interest.'" *Greenlight Cap., L.P. v. Apple, Inc.*, Nos. 13 Civ. 900(RJS), 13 Civ. 976(RJS). 2013 WL 646547, at *4 (S.D.N.Y. Feb. 22, 2013) (citation omitted). Moreover, "[i]n the Second Circuit, a plaintiff may satisfy the first element of this inquiry by establishing 'either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Id.* (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). In addition, "a clear likelihood of success on the merits requires a relatively lesser showing of harm." *Id.* at *8.

Courts readily grant preliminary injunctions and temporary restraining orders where, as here, plaintiffs seek to halt a major corporate transaction that would be difficult to reverse. *See, e.g., Mony Grp., Inc. v. Highfields Cap. Mgmt., L.P.*, 368 F.3d 138 (2d Cir. 2004) (reversing denial of preliminary injunction to avoid misinformed stockholder vote on merger); *Sonesta Int'l*

*Hotels Corp. v. Wellington Assoc.*, 483 F.2d 247, 255 (2d Cir. 1973) (reversing denial of preliminary injunction seeking injunction of tender offer).

Because the requirements for a temporary restraining order and a preliminary injunction overlap, Founders will address them together in the interest of efficiency. As detailed below, Founders meets the requirements for a temporary restraining order and preliminary injunction, including the additional balancing of hardships and public interest factors.

### B. Standard for the Underlying Breach of Fiduciary Duty Claim.

Because AlphaCare is a Delaware corporation, these claims are governed by Delaware law. *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980) ("New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation."). Under Delaware law, controlling stockholders owe fiduciary duties to the minority stockholders, which include both a duty of loyalty and a duty of care. Where a controlling stockholder engages in a transaction in which it stands on both sides of the transaction, it has the burden of showing that the transaction is entirely fair. *Am. Mining Corp. v Theriault*, 51 A.3d 1213, 1239 (Del. 2012) ("When a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness, with the defendants having the burden of persuasion. In other words, ***the defendants bear the burden of proving that the transaction with the controlling stockholder was entirely fair to the minority stockholders.***" (emphasis added)). This is the "most onerous standard" under Delaware law. *Reis v. Hazlett Strip-Casting Corp.*, 28 A.3d 442, 458 (Del. Ch. 2011).

### II. FOUNDERS HAS MET ITS BURDEN TO OBTAIN INJUNCTIVE RELIEF.

#### A. Founders Is Likely to Succeed on the Merits of Its Claims.

"To establish a likelihood of success on the merits, a plaintiff 'need not show that success is certain, only that the probability of prevailing is better than fifty percent.'" *Greenlight Cap.*,

-7-

ny-1302907

2013 WL 646547 at *4 (citations omitted). Founders has a more than reasonable likelihood of success on the merits of its claims that Magellan breached its fiduciary duties to Founders.

It is axiomatic that controlling stockholders of a Delaware corporation owe a fiduciary duty to the minority stockholders. *See Sterling v. Mayflower Hotel Corp.*, 93 A.2d 107, 109-10 (Del.1952) (recognizing a "settled rule of law" that controlling stockholders owe fiduciary duties to minority stockholders). Indeed, "the right to vindicate breaches of fiduciary duty inflicted by a majority stockholder on the minority is a central doctrine of Delaware law." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 160 (Del. 2002).

The likelihood of success on the merits is particularly strong where, as here, Magellan has the burden of proving that the underlying transactions were entirely fair. *See, e.g., ATR-Kim Eng Fin. Corp. v. Araneta*, C.A. No. 489-N, 2006 WL 3783520, at *16 (Del. Ch. Dec. 21, 2006) (explaining that the controlling stockholder has the burden of proving the entire fairness of a self-dealing transaction).

Here, Magellan is engaging in classic self-dealing and this transaction is just one incident in a lengthy scheme executed by Magellan to operate AlphaCare for its benefit to the detriment of the minority stockholders. Magellan is utilizing its position of control, including its control of the board, to force the merger of Alphacare with SWH NY resulting in its control of a newly-created entity buttressed by its related acquisition of SWH. In exchange for being forced out of its position, Founders will be insufficiently compensated while Magellan reaps all of the benefits.

This is classic self-dealing. For example, in *ATR-Kim Eng Fin. Corp. v. Araneta*, the Delaware Chancery Court found that where a controlling stockholder removed the primary assets of the company in exchange for effectively nothing, he "was prohibited from using his position

of control to extract value from the corporation to the exclusion of, and detriment to, the minority stockholders" and thus, he had an "obligation to prove that the transfer he structured using his total dominion over the [company's] affairs was fair to the minority rather than an extraction of value to their detriment." C.A. No. 489-N, 2006 WL 3783520, at *16 (Del. Ch. Dec. 21, 2006). The court found that he failed to make this showing. So too here will Magellan fail to meet its burden of showing that the transaction was entirely fair to the minority stockholders.

Moreover, Founders has a reasonable likelihood of success on the merits of its claims related to its designees being wrongfully forced from the boards of AlphaCare and AlphaCare NY. As part of the Stockholders Agreement, Founders negotiated for two board seats on AlphaCare's board. (Ex. F, § 1.2(b).) Following the transactions contemplated by the October 23 meeting notice, Founders' stock will be diluted below the threshold necessary to appoint directors to the board of AlphaCare and Founders' designees will be forcibly removed from the boards of AlphaCAre and AlphaCare NY. At bottom, Magellan now seeks to use its position to forcibly remove Founders' directors, who will forever be silenced from challenging Magellan's inequitable conduct. Indeed, Delaware courts have enjoined board reduction plans. *See, e.g., Pell v. Kill*, 135 A.3d 764, 787-89, 792, 794 (Del. Ch. 2016) (explaining that a board reduction plan "'touch[ed] on' matters of corporate control" and was preclusive having been designed to guarantee control of the board).

**B.     Founders Will Suffer Irreparable Harm in the Absence of Injunctive Relief.**

Founders will suffer irreparable harm if the merger is permitted to go forward. "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'" *Tom Doherty Assocs., Inc. v. Saba Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (citations omitted). The threat of irreparable harm is particularly strong in merger and other corporate transaction cases because once a corporate

transaction "has been consummated, restoration of the status quo may be impossible." *Bank of N.Y. Co. v. Ne. Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993) (denying appeal from order denying preliminary injunction where the transaction had been consummated). Indeed, "[a] preliminary injunction is ... the remedy of choice for preventing an unlawful merger." *Consol. Gold Fields PLC v. Minorco, S. A.*, 871 F.2d 252, 261 (2d Cir.), *amended on other grounds*, 890 F.2d 569 (2d Cir. 1989) (citation omitted); *Am. Insured Mort. Investors v. CRI, Inc.*, 1990 U.S. Dist. LEXIS 15787, at *18 (S.D.N.Y. Nov. 26, 1990) ("In corporate control contests, the stage of preliminary injunctive relief, rather than post-contest lawsuits, 'is the time when relief can best be given.'") (citation omitted). As courts have explained, if the merger is permitted to close, "it becomes difficult and sometimes virtually impossible for a court to 'unscramble the eggs.'" *Am. Insured Mort. Investors*, 1990 U.S. Dist. LEXIS 15787, at *19 (citations omitted). So too here.

The Court should enjoin the consummation of this transaction and maintain the status quo pending the outcome of the litigation. If the Court permits the transaction to close, Founders will suffer irreparable harm and be unable to "unscramble the eggs" effectively eliminating its provisional remedy.

### C. The Balance of Hardships and Public Interest Weigh in Founders' Favor.

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Greenlight Cap., L.P.*, 2013 WL 646547, at *9 (citation omitted). As the Second Circuit has explained, because "it is difficult, if not impossible, for courts to unscramble the eggs" post-merger, this weighs in favor of granting an injunction. *Consol. Gold Fields PLC v. Anglo Am. Corp. of S Africa Ltd.*, 698 F.Supp. 487, *aff'd in part and rev'd on other grounds*, 871 F.2d 252 (2d Cir.). Absent an injunction, Magellan's unlawful conduct will irreparably harm Founders by inflicting substantial injury on Founders who will lose their bargained-for rights.

-10-

On the other hand, Magellan cannot show that it will be harmed by a delay in consummating the merger. And whatever burden Magellan may face as a result of the requested injunctive relief is the result of its own doing and does not sway the balance of hardships in its favor.

Moreover, the public has a protectable interest in protecting stockholders' rights. Indeed, the courts have "a strong interest in policing the behavior of fiduciaries who agree to final-stage transactions." *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 842 (Del. Ch. 2011). Courts are particularly leery where, as here, "the illicit behavior is secretive and subversive." *Id.*

## CONCLUSION

For these reasons, and those discussed above, Founders respectfully requests that the Court grant the accompanying Plaintiff's Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction.

Dated: October 25, 2017
New York, New York

MORRISON & FOERSTER LLP

James J. Beha II
Christina L. Golden
250 West 55th Street
New York, New York 10019
(212) 468-8000

*Attorneys for Alpha Founders Holding, LLC*