UNITED STATES DISTRICT COURT                           <u>PUBLIC REDACTED VERSION</u>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ALPHA FOUNDERS HOLDING, LLC,                         :
                                                     :        Index No. 17-CV-6225 (DLI)
                              Plaintiff,             :
                                                     :        Hon. Dora L. Irizarry
             -against-                               :
                                                     :
MAGELLAN HEALTH, INC.,                               :
                                                     :
                              Defendant.             :
                                                     :
------------------------------------------------------------- x


**DEFENDANT MAGELLAN HEALTH, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
ALPHA FOUNDERS HOLDING, LLC'S
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**


Jonathan K. Cooperman
Sojin Yoon
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Defendant
Magellan Health, Inc.*

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ............................................................................ 1

**STATEMENT OF FACTS** ................................................................................. 5

**ARGUMENT** ..................................................................................................... 7

I.     PLAINTIFF HAS FAILED TO JOIN NECESSARY AND INDISPENSABLE PARTIES WHO WOULD DIVEST THIS COURT OF DIVERSITY JURISDICTION ............................................................................................ 7

II.    PLAINTIFF HAS NO STANDING TO BRING THIS LAWSUIT SINCE  IT NO LONGER HAS ANY RIGHT TO OWN ALPHACARE HOLDINGS COMMON STOCK ........................................................................................ 10

III.   PLAINTIFF HAS FAILED TO ESTABLISH IRREPARABLE INJURY NECESSARY TO OBTAIN AN INJUNCTION ............................................. 11

      A.    Plaintiff Makes No Showing of Why It Will Be Irreparably Harmed;  It Instead Seeks Money Damages for the Alleged Decrease in Value of Common Stock .................................................................................. 11

      B.    Plaintiff Misleadingly Claims That It Is Losing Board Seats; Such a Loss Would Not in Any Event Result in Irreparable Harm ......................... 14

      C.    Plaintiff's Delay in Seeking a TRO and Preliminary Injunction Demonstrates That There is No Need for This Extraordinary Relief ................. 15

      D.    The Irreparable Harm Cases Cited By Alpha Founders Are Distinguishable ..................................................................................... 17

IV.   THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN MAGELLAN'S FAVOR ............................................................................................................ 17

V.    PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM BECAUSE THE MERGER WAS ENTIRELY FAIR ..................................... 19

      A.    The Approved Merger Was The Product of a Fair Process; Founders' Directors Chose Not to Participate In That Process ............................ 19

      B.    Rather Than Challenge the Independent Mercer Capital Fairness Opinion, Founders Relies Upon It ................................................................... 21

      C.    The Merger Will Increase the Value of the Common Stock Founders Claims to Own, Thereby Benefitting Founders .................................. 22

**CONCLUSION** .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re Alloy*,
No. 5626-VCP, 2011 Del. Ch. LEXIS 159 (Del. Ch. Oct. 13, 2011) ....................................21

*Barfield v. Murphy*,
578 F. Supp. 2d 638 (S.D.N.Y. 2008)..................................................................................8, 9

*Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*,
638 F.2d 568 (2d Cir. 1981)..............................................................................................7, 18

*Carey v. Klutznick*,
637 F.2d 834 (2d Cir. 1980) (per curiam)...............................................................................18

*Cinerama, Inc. v. Technicolor, Inc.*,
663 A.2d 1134 (Del. Ch. 1994), *aff'd*, 663 A.2d 1156 (Del. 1995) ....................................22

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985)....................................................................................................16

*Consolidated Gold Fields PLC v. Minorco, S.A.*,
871 F.2d 252 (2d Cir. 1989)....................................................................................................17

*Cresent/Mach I Parners, LP v. Turner*,
846 A.2d 963 (Del. Ch. 2000)..................................................................................................22

*Crouse-Hinds Co. v. InterNorth Inc.*,
634 F.2d 690 (2d Cir. 1980) .....................................................................................................8

*El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*,
152 A.3d 1248 (Del. 2016) .......................................................................................................8

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
596 F.2d 70 (2d Cir. 1979)......................................................................................................11

*Koehler v. NetSpend Holdings, Inc.*,
No. 8373-VCG, 2013 Del. Ch. LEXIS (Del. Ch. May 31, 2013)...........................................22

*Lambrecht v. O'Neal*,
3 A.3d 277 (Del. 2010) ......................................................................................................10, 11

*Lessler v. Dominion Textile, Ltd.*,
411 F. Supp. 40 (S.D.N.Y. 1975) ...........................................................................................13

*Majorica, S.A. v. R.H. Macy & Co.*,
762 F.2d 7 (2d Cir.1985) ................................................................................16

*Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*,
988 F. Supp. 404 (S.D.N.Y. 1997) .................................................................12

*McKenna v. Singer*,
No. 11371-VCMR, 2017 Del. Ch. LEXIS 138 (Del. Ch. July 31, 2017) ..............................11

*Minzer v. Keegan*,
No. CV-97-4077 (CPS), 1997 U.S. Dist. LEXIS 16445 (E.D.N.Y. Sept. 22, 1997) ........................................................................................7, 11, 12, 13

*North American Airlines, Inc. v. International Board of Teamsters*,
No. 04-CV-9949, 2005 U.S. Dist. LEXIS 6819 (S.D.N.Y. Apr. 18, 2005)............................16

*Richard J. Zitz v. Pereira*,
965 F. Supp. 350 (E.D.N.Y. 1997) .................................................................12

*Testa v. Jarvis*,
No. 12847, 1993 Del. Ch. LEXIS 281 (Del. Ch. Dec. 30, 1993) ............................................11

*Tom Doherty Associations v. Saban Entertainment, Inc.*,
60 F.3d 27 (2d Cir. 1995).............................................................................17

*Wallerstein v. Primerica Corp.*,
701 F. Supp. 393 (E.D.N.Y. 1988) .................................................................13

*Walton v. Morgan Stanley & Co.*,
623 F.2d 796 (2d Cir. 1980).........................................................................19

*Weinberger v. UOP*,
457 A.2d 701 (Del. 1983) .......................................................................19, 20

## Other Authorities

Fed. R. Civ. P. 19 ..............................................................................3, 8-10

Defendant Magellan Health, Inc. ("Magellan") respectfully submits this memorandum of law in opposition to Plaintiff Alpha Founders Holding LLC's ("Founders") motion for a Preliminary Injunction.

## PRELIMINARY STATEMENT

This case is the third lawsuit spawned from the decision by Magellan's subsidiary, Magellan Healthcare, Inc. ("Magellan Healthcare"), to exercise its contractual right to purchase Founders' ownership in AlphaCare Holdings, Inc. ("AlphaCare Holdings") at the price agreed to by the parties in 2013. Despite its deemed acceptance of Magellan Healthcare's buyout, Founders has ignored its obligations, refused to transfer its shares, and misused the courts in an effort to frustrate Magellan Healthcare's right to own 100% of AlphaCare Holdings. Founders' claims in this action all involve events that occurred during the period after it was obligated to transfer its shares to Magellan Healthcare. Although Founders still maintains physical possession of its shares, it has no legal right to those shares and should not be heard to assert shareholder rights in this Court.

This action is just another attempt to erect a roadblock that Founders hopes will force Magellan Healthcare to pay more than the agreed upon buyout price on top of the $65.5 million that it has already invested in AlphaCare Holdings. The merger that Founders seeks to block will not diminish the value of the common stock that it claims to own because the common stock currently has no value, a situation created by Founders' decision not to fund AlphaCare Holdings' ongoing capital needs, leaving Magellan Healthcare alone to cover the necessary $40 million in preferred stock investments that have preference over the common stock. The proposed merger can only improve the value of the common stock.

In seeking to enjoin a merger between two managed health companies that provide

1

elderly, frail and disabled New Yorkers with at-home care, Founders' submission misstates the facts, fails to disclose material facts and seeks a preliminary injunction without presenting any evidence in admissible form.  The complete factual record accompanying this submission demonstrates that Founders' motion should be denied on a number of independent grounds.

In short, AlphaCare of New York, Inc. ("AlphaCare NY") was a start-up company founded by Founders' principals, but was not an operating business due to a lack of capital needed to meet the New York State Department of Health (the "DOH") regulatory capital requirements.  Initial investments of $25 million by Magellan Healthcare allowed AlphaCare NY to become operational.  However, contrary to Founders' unsubstantiated assertions, it has never been a successful company financially.  From 2013 through 2016, AlphaCare NY lost money every year, totaling more than $31 million, and required constant capital infusions to meet the DOH requirements.  Since 2014, Magellan Healthcare invested $40 million to allow AlphaCare NY to continue to operate, while Founders declined to invest any money at all.

In January 2017, Magellan Healthcare exercised its contractual option under the parties' Stockholder Agreement to purchase all of Founders' common stock.  As a result of AlphaCare NY's persistent operating losses, the purchase price was $1 based on the agreed-to formula contained in the Stockholder Agreement.  Founders did not contest Magellan Healthcare's calculation, but then refused to turn over the common stock.  Magellan Healthcare was thus forced to bring a Delaware lawsuit to force a turnover of that stock.  In other words, but for Founders' wrongful refusal to comply with the Stockholder Agreement, Founders has no right to the common stock which it now claims is being devalued by the merger.

The current merger is the result of Magellan Healthcare seeking to merge the chronically money-losing AlphaCare NY business with the larger and profitable business of Senior Whole

2

Health of New York, Inc. ("SWH NY").  Founders does not disclose that this merger was presented to, and approved by, the Boards of AlphaCare NY and its parent AlphaCare Holdings.

All of the Directors, including the two Founders affiliated Directors, received detailed information about the merger prior to the Boards of Directors meetings of AlphaCare Holdings and AlphaCare NY held on September 27, 2017.  The Founders Directors did not object to moving forward with the merger at those meetings, but instead abstained from voting.  All Directors similarly received detailed information prior to the October 6, 2017 Board meetings, including notice of the actual plan of merger, and notice that there would be a discussion of an independent expert's fairness opinion.  The Founders Directors nevertheless did not attend the October 6, 2017 meeting, where the merger was discussed and properly approved.

Having done nothing as Board members to object to the merger, Founders is now asking this Court to inject itself into a merger that the Founders Directors never even questioned as Board members.  Indeed, Founders' emergency application to this Court did not disclose that the merger Founders sought to enjoin had already been approved nearly three weeks earlier on October 6, 2017.  Founders' submission is striking in that it contains no admissible evidence in the form of declarations by individuals with knowledge of the facts and should be denied for a variety of independent grounds.

*First*, the actual parties to the merger, AlphaCare NY and SWH NY, and the corporation in which Founders is a shareholder, AlphaCare Holdings, are necessary parties to this lawsuit under Fed. R. Civ P. 19 as they will be directly impacted by Founders' attempt to block their merger and because this is a classic "derivative" lawsuit.  Founders has clearly not sued them since their inclusion would divest this Court of diversity jurisdiction.  This case should be dismissed as Founders can bring this claim in Delaware Chancery Court, the only forum where

3

the necessary parties can be joined.

*Second*, Founders has no standing to bring this lawsuit for the alleged financial impact to common stock that it no longer owns. After investing over $65 million to keep AlphaCare NY financially viable, Magellan Healthcare properly exercised its Stockholder Agreement option to purchase Founders' common stock. Founders' wrongful refusal to relinquish the common stock deprives it of the right to bring this lawsuit.

*Third*, Founders has failed to demonstrate irreparable injury – the most basic requirement for a preliminary injunction. This is strictly a case for money damages. The Complaint and the Moving Memorandum both claim a $10 million loss as a result of the merger and provide a means to calculate that amount. Founders does not identify any irreparable harm that it will suffer due to the merger, much less present any admissible evidence of such irreparable harm.

*Fourth,* the balance of the equities decidedly weigh in favor of denying the injunction. AlphaCare NY started taking steps to implement the merger after it was approved at the October 6, 2017 Board meeting, including sending required DOH notices to its elderly, frail and disabled plan enrollees. In the event of an injunction, the revised notices that AlphaCare NY will have to issue runs the risk of causing mass confusion among the vulnerable population of plan enrollees. AlphaCare NY itself will be irreparably harmed since it will be difficult, if not impossible, to determine which enrollees will then switch to competitive plans due to the confusion caused by the inconsistent notices. In contrast, Founders has not pointed to any harm to itself that cannot be compensated by money damages.

*Fifth*, Founders has not established a likelihood of success on the merits. The merger transaction was properly presented to, and considered by, the AlphaCare Holdings Board and supported by the independent Mercer Capital fairness opinion which Founders does not

challenge.  The two Founders Directors had every opportunity at the Board level to question and object to the merger, but never did so, which further illustrates that they did not believe there were grounds to object to the merger.  Moreover, the proper valuation calculation presented in the accompanying Tcherepnin Declaration demonstrates that the common stock Founders claims to own currently has no actual value given the senior status of Magellan Healthcare's $65 million in preferred stock, issued in exchange for Magellan Healthcare's huge investments, and the fact that AlphaCare NY has never been profitable.  The assumed value of the common stock for the purpose of the merger will actually *increase* as a result of the merger by approximately $700,000.

For all these reasons, Founders has failed to meet its heavy burden of demonstrating that it is entitled to a preliminary injunction.

## STATEMENT OF FACTS

Facts relevant to this Memorandum are contained in the Declarations of Nicholas Tcherepnin, Matthew Peary and Anthony Como to which the Court is respectfully referred.

In addition, Founders' papers fail to disclose two pending lawsuits between the parties that are relevant to this proceeding.  On January 3, 2017, Magellan Healthcare notified Founders of its election to exercise its option under the Stockholder Agreement to purchase the AlphaCare Holdings common stock owned by Founders.  (Peary Decl. ¶ 28.)  Magellan Healthcare followed the process under the Stockholder Agreement and submitted a computation that the option price was $1 based on the Agreed Value formula set forth in the Stockholder Agreement because of AlphaCare Holdings' negative EBITDA for the rolling 12 months ending on November 30, 2016.  (*Id*. ¶¶ 28-29.)  Subsequently, on February 10, 2017, following receipt of a letter from Founders' counsel objecting to the time period used by Magellan Healthcare in calculating the Agreed Value, Magellan Healthcare delivered a revised written notice to Founders with

5

supporting documentation and work papers, which detailed its computation of the Agreed Value for the rolling twelve month period ending December 31, 2016, resulting in the same option price of $1.  (*Id.* ¶ 30.)  Founders had the ability to challenge Magellan Healthcare's Agreed Value notices under the Stockholder Agreement, but did not do so.  (*Id.* ¶ 31.)  Founders' failure to challenge Magellan Healthcare's Agreed Value was deemed acceptance of that value under the Stockholder Agreement.  (*Id.*)

Despite demand by Magellan Healthcare, however, Founders has refused to hand over its shares in breach of Section 12 of the Stockholder Agreement.  Accordingly, on May 3, 2017, Magellan Healthcare brought an action against Founders captioned *Magellan Healthcare, Inc. F/K/A Magellan Behavioral Health, Inc. v. Alpha Founders Holding, LLC*, Case No. 2017-0336 pending in Delaware Chancery Court (the "Delaware Action").  The Delaware Action seeks an Order requiring Founders to specifically perform the Stockholder Agreement by performing all obligations required of it to close on the purchase by Magellan Healthcare of Founders' common stock in AlphaCare Holdings as set forth in Section 12(a)(iv) of the Stockholder Agreement.  (Cooperman Decl., Ex. 1, Delaware Action Complaint.)  This action is currently pending with Founders deploying a delay strategy by improperly seeking a stay pending resolution of its separate state court action pending in Kings County Supreme Court.

Founders brought a separate action against Magellan Healthcare in New York State Supreme Court, Kings County captioned *Alpha Founders Holding, LLC v. Magellan Behavioral Health, Inc*. Index No. 506478/2017 (the "New York State Court Action").  The Complaint filed on June 16, 2017, alleges causes of action for breach of fiduciary duty, unjust enrichment and corporate waste.  (Cooperman Decl., Ex. 2, New York State Court Action Complaint.)  Founders essentially alleges that Magellan Healthcare used its control of the AlphaCare Holdings Board to

cause the company to incur financial losses in order to take advantage of its purchase option under the Stockholder Agreement.  Relevant to this preliminary injunction motion, Founders in the New York State Action does not seek a declaratory judgment that it is entitled to the shares of Alpha Holdings common stock that are subject to the Delaware Action.  Instead, Founders seeks only monetary damages.  (*Id.*)

Based on the Stockholder Agreement's broad arbitration clause, which provides that "any unresolved controversy or claim arising out of or relating to this Agreement . . . shall be submitted to arbitration" before the AAA, Magellan has moved to compel arbitration of the New York State Court Action.  Magellan has also, in the alternative, moved to dismiss based on AlphaCare Holdings' Certificate of Incorporation's mandatory Delaware forum selection clause.

## ARGUMENT

A preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted" unless the movant, by a clear showing, carries the burden of persuasion. *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981).  The moving party bears the burden of proving: "(1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly towards plaintiffs." *Minzer v. Keegan*, No. CV-97-4077 (CPS), 1997 U.S. Dist. LEXIS 16445, at *13 (E.D.N.Y. Sept. 22, 1997).  For the reasons below, Founders has failed to demonstrate any of these prerequisites.

**I.     PLAINTIFF HAS FAILED TO JOIN NECESSARY AND INDISPENSABLE PARTIES WHO WOULD DIVEST THIS COURT OF DIVERSITY JURISDICTION**

Founders seeks to enjoin the merger of AlphaCare NY and SWH NY.  However, neither of those companies have been named as parties to this lawsuit.  Instead, Founders has only sued Magellan, which it alleges to be the "controlling stockholder of AlphaCare Holdings, Inc."

(Compl. at 1.)  AlphaCare Holdings is not a party to the merger, but is the parent company of AlphaCare NY and the entity that allegedly is not receiving a fair value in the merger, which results in harm to Founders through its ownership of AlphaCare Holdings stock.  That is a classic derivative claim.  *See e.g.*, *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) ("[B]ecause such claims 'naturally assert that the corporation's funds have been wrongfully depleted, which, though harming the corporation directly, harms the stockholders only derivatively so far as their stock loses value.'").  Founders has no doubt failed to join AlphaCare NY, SWH NY, and AlphaCare Holdings since those are New York entities, like Founders, and there would be no basis for diversity jurisdiction if they were defendants.

In *Crouse-Hinds Co. v. InterNorth Inc.*, 634 F.2d 690, 701 (2d Cir. 1980), the Second Circuit dealt with Fed. R. Civ. P. 19 "Required Joinder of Parties" in the context of a lawsuit to enjoin a merger.  There, the defendant asserted a counterclaim seeking to enjoin a proposed merger between the plaintiff and a third party, Belden, as lacking any legitimate business purpose. *Id*. at 697 & n. 15.  The Second Circuit reversed the district court's grant of a preliminary injunction because Belden was a necessary party to the lawsuit, stating as follows:

> Since there is no question that the [merger agreement] is a contract that was within the powers of the corporation, and since Belden's rights thereunder would clearly be prejudiced if the relief sought by InterNorth were to be granted, Belden's presence is required. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Shields v. Barrow*, 58 U.S. 130, 139-40, 17 How. 130, 139-40, 15 L.Ed. 158 (1854); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975), cert. denied, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable").

*Id.* at 700-01.

Similarly, in *Barfield v. Murphy*, 578 F. Supp. 2d 638, 641 (S.D.N.Y. 2008), the court

addressed whether an LLC in a derivative action brought by one of its members alleging breach of fiduciary duty against another member was an indispensable party even though its joinder would destroy diversity of citizenship.  The court found that the LLC was both a necessary and indispensable party in a derivative action under Fed. R. Civ. P. 19(b), and ordered that the derivative claims be dismissed because joinder would deprive the court of jurisdiction.  *See id.* at 650-51.

Fed. R. Civ. P. 19(b) concerns situations where, as here, joining a necessary party will divest a court of subject matter jurisdiction.  Rule 19(b) guides a court's determination of whether "the action should proceed among the existing parties or should be dismissed."  An analysis of the Rule 19(b) factors compels the dismissal of this case.  First, Founders clearly has an alternative forum to present its claim – the Delaware Chancery Court where this case should have been brought in the first place and where the prior Delaware Action is now pending.  *See* Fed. R. Civ. P. 19(b)(4).  Indeed, the Stockholder Agreement that governs disputes between Magellan Healthcare and Founders specifically provides a narrow exception to the mandatory arbitration of disputes between the parties for this type of dispute to be brought in Delaware.  (Pl. Mot. Ex. F § 18.13(b).)

Moreover, AlphaCare NY and SWH NY are the parties to the merger and their business and rights under the already approved merger will be prejudiced if the preliminary injunction is granted.  Based upon the NY DOH approval, the companies have moved forward with merger preparations, including sending out notices to plan members pursuant to DOH regulations about the approved merger.  (Como Decl. ¶¶ 24-25.)  If plan members were to receive new notices stating that the merger was not going forward, the ensuing confusion would likely cause members to leave for other company plans, thus causing material financial impacts to the

9

business of Alpha Care NY and SWH NY without those companies being part of this lawsuit.

Because joinder of AlphaCare NY, SWH NY and AlphaCare Holdings would completely destroy diversity of citizenship, they cannot be joined as defendants. Therefore, Founders' Complaint should be dismissed pursuant to Fed. R. Civ. P. 19(b) and Founders directed to seek its requested relief in Delaware, where it specifically contracted to have such disputes heard.

## II.   PLAINTIFF HAS NO STANDING TO BRING THIS LAWSUIT SINCE IT NO LONGER HAS ANY RIGHT TO OWN ALPHACARE HOLDINGS COMMON STOCK

The Stockholder Agreement gave Magellan Healthcare the option to purchase all of Founders' common stock in AlphaCare Holdings. (Peary Decl. ¶ 27.) The purchase price for that option was based on the company's financial performance. (*Id*. ¶¶ 27-29.)

After having invested over $65 million to keep AlphaCare NY solvent and operating while Plaintiff refused to invest a cent (*see id*. ¶¶ 3-6, 21-26), Magellan Healthcare exercised that option on January 3, 2017. Founders had the ability under the Stockholder Agreement to challenge the Agreed Value that Magellan Healthcare used to exercise that option, but did not do so, thereby being deemed to have agreed to that valuation. (*Id*. ¶ 31.)

Founders has subsequently refused to turn over its shares of common stock as it was required to do under the Stockholder Agreement. (*Id*. ¶ 32.) Magellan Healthcare thus needed to bring the Delaware Action to force Founders to do so where, in contrast to its purported need for urgency here, Founders is employing delay tactics without disputing the merits of Magellan's claims. (*See* pp. 5-6, *supra*.) While Founders then filed is complaint in the New York State Court Action, Founders is not seeking a declaration that it is the rightful owner of the common stock. Rather, it is seeking a payment of money damages, implicitly conceding that it no longer owns that stock. (*See* pp. 6-7, *supra*.)

In order to bring a lawsuit, a shareholder must demonstrate that it is the legal owner of

stock.  *See e.g.*, *Lambrecht v. O'Neal*, 3 A.3d 277, 287 (Del. 2010) ("[T]he plaintiffs must

demonstrate that at the time of alleged wrongdoing at Merrill Lynch, they owned stock in BofA .

. . .").  Founders brings the current action for the claimed devaluation to common stock that it no

longer rightfully owns.  Its only interest as a shareholder is based on its wrongful refusal to turn

over that common stock to Magellan Healthcare, as it agreed to do under the Stockholder

Agreement.  (Como Decl. ¶ 32.)  However, "possession of a [stock] certificate does not itself

constitute ownership of shares."  *Testa v. Jarvis*, No. 12847, 1993 Del. Ch. LEXIS 281, at *19

(Del. Ch. Dec. 30, 1993).  Indeed, Founders should not be allowed to bring this lawsuit at the

same time that it engages in such improper conduct.  *See e.g.*, *McKenna v. Singer*, No. 11371-

VCMR, 2017 Del. Ch. LEXIS 138, at *36 (Del. Ch. July 31, 2017) ("Plaintiffs are not entitled to

equitable relief when their own acts offend the very sense of equity to which they appeal.").

## III.     PLAINTIFF HAS FAILED TO ESTABLISH IRREPARABLE INJURY NECESSARY TO OBTAIN AN INJUNCTION

### A.     Plaintiff Makes No Showing of Why It Will Be Irreparably Harmed; It Instead Seeks Money Damages for the Alleged Decrease in Value of Common Stock

Irreparable harm is "the single most important prerequisite for the issuance of a

preliminary injunction."  *Minzer*, 1997 U.S. Dist. LEXIS 16445, at *13.  Irreparable harm is an

"injury for which a monetary award cannot be adequate compensation."  *Jackson Dairy, Inc. v.*

*H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).  Irreparable harm "must be shown to be

imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied

by monetary damages."  *Minzer*, 1997 U.S. Dist. LEXIS 16445, at *14 (*citing Tucker Anthony*

*Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).  "The moving party must show

that injury is likely before the other requirements for an injunction will be considered."  *Id.*

Founders presents no evidence of irreparable injury.  Indeed, Founders' less than one

page section on irreparable harm in its memorandum of law contains no argument or explanation whatsoever about how it may suffer irreparable harm.  (Pl. Mem. at 9-10.)  Nor does Founders submit a substantive declaration explaining how Founders will suffer irreparable harm, which by itself is reason to deny a preliminary injunction.  In denying a preliminary injunction, the court in *Markowitz Jewelry Co. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 407 (S.D.N.Y. 1997), stated that testimonial evidence "must be in the form of affidavits" and "unsworn statements by counsel simply will not do."  *See also Richard J. Zitz v. Pereira*, 965 F. Supp. 350, 353 (E.D.N.Y. 1997) ("The only other documents supporting the application for a preliminary injunction are those submitted by Zitz's counsel in the form of legal memoranda and the complaint, neither of which serve as a substitute for evidence.").

Moreover, Founders pleads a classic case of money damages.  Founders seeks to block a merger that it contends will "result[] in a transfer of value from Founders to Magellan of approximately $10 million." (Compl. ¶ 33.)  That is the amount of money that Founders seeks in its prayer for relief.  (*Id.* at 9.)

Courts have consistently held that a loss in stock value is compensable through monetary damages and thus does not constitute irreparable harm for purposes of a preliminary injunction.  For example, in *Minzer*, the plaintiff stockholders sued defendant directors and senior officers for breach of their fiduciary obligations to their shareholders when they approved a merger with another bank. *See* 1997 U.S. Dist. LEXIS 16445, at *10.  The plaintiffs argued that the price they would receive if the merger was completed would be "grossly unfair." *Id.* at *14.  In denying plaintiff's preliminary injunction motion for lack of irreparable harm, the Court stated as follows:

> As long as the calculation of damages is not speculative, and plaintiffs go no further than alleging that their injury is 'potentially speculative,' money damages that can be reasonably inferred are not irreparable.

*Id.* at *15.

Similarly, in *Wallerstein v. Primerica Corp.*, 701 F. Supp. 393, 394 (E.D.N.Y. 1988), plaintiffs sought to enjoin a potential merger, alleging that the notice of meeting and proxy statement contained misleading facts that would influence the shareholders in the merger vote. In denying a preliminary injunction, this Court held that:

> The plaintiffs have an adequate remedy at law in the form of an action for damages should they be able, at some future time, to establish their claims.  It cannot be gainsaid but that the loss they seek to avert and which they claim they will suffer is a monetary one.  Should they be successful after a trial, the calculation of damages would be neither so complex nor speculative as to make the formulation of a remedy at law impossible.

*Id.* at 399 (internal quotations omitted).

In *Lessler v. Dominion Textile, Ltd.,* 411 F. Supp. 40, 41 (S.D.N.Y. 1975), plaintiff alleged that the shareholders who comprised 5% of the corporation's stock were being "squeezed out" unfairly by defendants in the merger.  Again, the Court denied the preliminary injunction, holding that "the adequacy and ease of availability of the state remedy of appraisal eliminates the risk of irreparable injury and mitigates any hardship to the plaintiff."  *Id*. at 42.

Here, Founders alleges purely money damages of approximately $10 million as a result of the merger between AlphaCare NY and SWH NY.  (Pl. Mem. 1, 5-6.)  This is no different than in the New York State Court Action where Alpha Founders also seeks purely money damages.  (*See* Cooperman Decl., Ex. 2.)  Nor according to Plaintiff is its calculation of damages speculative.  Plaintiff's calculation is based on what Plaintiff claims is the reduction of its percentage ownership in AlphaCare Holdings from 16.1% to 2.5%.  (Compl. ¶¶ 32-33.)  While Magellan strongly disputes that Founders will suffer any harm as a result of the merger, for the purposes of this motion Founders acknowledges that the damage to its stock can be readily determined if it ultimately prevails on the merits.

**B.**     **Plaintiff Misleadingly Claims That It Is Losing Board Seats; Such a Loss Would Not in Any Event Result in Irreparable Harm**

When challenged at the TRO hearing on the issue of irreparable harm, Founders'

counsel's only response was that a merger would cause a "loss of control," asserting that:

> Once those [additional two million] shares are issued, then we lose our two [Board] seats altogether. So once those shares are issued, we have zero seats. And, so, the control issue – we are entitled to our seats on the Board so long as we have ten percent of the outstanding common share. Right now we are at sixteen percent. If two million additional shares are issued, we will not have any right to have any representation on the Board.

(TRO Tr. 33:9-15.) Founders made a similar argument in the "likelihood of success" section of

its memorandum.  (Pl. Mem. at 9 ("Founders' stock will be diluted below the threshold necessary

to appoint directors to the board of AlphaCare and Founders' designees will be forcibly removed

from the Boards of AlphaCare and AlphaCare NY.").)  Founders did not raise this as part of its

irreparable harm argument.

This argument is factually incorrect since Founders never had any control over either

AlphaCare company; at best, it is entitled to a minority of the Board members of AlphaCare

Holdings.  The proposed merger is between AlphaCare NY and SWH NY.  Under the

Stockholder Agreement, Founders has a contractual right to two Board seats for AlphaCare NY's

parent, AlphaCare Holdings, provided that it maintains contractually set ownership thresholds.

(Peary Decl. ¶ 8.)  AlphaCare Holdings is not being impacted by the merger and Founders will

continue to have its contractual rights to AlphaCare Holdings Board seats post-merger.  (Como

Decl. ¶ 20.)

In contrast, Founders has no contractual right to any AlphaCare NY Board seats. (Peary

Decl. ¶ 11.)  Founders has simply been allowed to date to have two members on the AlphaCare

NY Board.  (*Id*.)  However, in order to remove any concern that the Court might have regarding

Board representation, the directors of SWH NY, the surviving entity in the merger, have passed a resolution increasing the Board size to ten and adding the two Founders representatives currently on the AlphaCare NY Board to the SWH NY Board effective immediately following the merger. (Como Decl. ¶ 27.)  In addition, Magellan will stipulate that it will not take any action to remove Messrs. Harrington and Landau from the Boards of AlphaCare Holdings or SWH NY during the pendency of this action, unless there is a judicial determination in the interim establishing Magellan Healthcare's right to Founders' shares.  (*Id*. ¶ 28.)

Just as importantly, Founders has at best a right to a minority position on the AlphaCare Holdings Board.  Founders has the right to two Board seats, as opposed to right to a percentage of Board seats.  (Peary Decl. ¶¶ 8-9.)  The total number of AlphaCare Holdings Directors may be increased upon consent of Magellan Healthcare.  In the event of an increase in the number of AlphaCare Holdings Directors, Founders' Board representation remains at a maximum of two seats.  (*Id*.)  Putting aside that the merger will not impact Founders seats or the AlphaCare Holdings Board, Founders fails to state how an impact to a non-controlling minority Board position creates a loss of control, much less irreparable harm.

### C.    Plaintiff's Delay in Seeking a TRO and Preliminary Injunction Demonstrates That There is No Need for This Extraordinary Relief

Founders' pattern of delay in bringing this action can be summarized as follows:

- The Founders Board representatives attended the September 27, 2017 Board meeting where the merger was fully discussed.  (Como Decl. ¶¶ 4-11.)

- The Founders Board representatives were given notice of the October 6, 2017 Board meeting where the Mercer Capital fairness opinion and final approval of the merger was to be voted on.  They chose not to attend and the Board approved the merger.  (*Id*. ¶¶ 12-17.)

- Founders' injunction papers do not even mention the October 6, 2017 meeting where the merger was approved.

- Having posed no objections or requests for further information, Founders waited

until October 25, 2017 to bring this request for emergency relief.  (*Id*. ¶¶ 4-18.)

Preliminary injunctions are extraordinary remedies predicated upon an urgent need for speedy action.  A delay in seeking the remedy undermines any claim of irreparable harm, and provides another ground for denying an injunction.  "[F]ailure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)). Further, the Second Circuit has stated that "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm." *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir.1985).

In *North American Airlines, Inc. v. International Board of Teamsters*, No. 04-CV-9949, 2005 U.S. Dist. LEXIS 6819, at *2 (S.D.N.Y. Apr. 18, 2005), the plaintiff sought to enjoin the defendant from continuing to prosecute the parallel action in another jurisdiction.  The court found no irreparable harm when the plaintiff did not file its injunction motion until "ten days after the Court [dismissed the case for lack of subject matter jurisdiction], and eight days after [plaintiff filed a notice of appeal]." *Id.* at *15.

Here, Plaintiff took no steps to bring this lawsuit while the merger was being discussed or approved.  Indeed, the Founders Directors did not even object to the merger at the relevant Board meetings.  They abstained from voting at the September 27, 2017 meeting and then did not attend the October 6, 2017 meeting where the Board voted to approve the merger.  (Como Decl. ¶¶ 4-17.)  Founders contends that the proposed actions at the October 23, 2017 Board meeting gave rise to the urgent need to relief.  However, the merger had already been approved more than two weeks earlier and the purpose of the October 23, 2017 meeting was to take steps to implement the already approved Agreement and Plan of Merger.  (*Id*. ¶ 18.)  Although not

addressed in its papers, Founders waited to bring this lawsuit seeking money damages until after steps were already being taken to implement the approved merger, including notices being sent to plan members.  (*Id*. ¶¶ 18-26.)  This delay demonstrates a lack of urgency which courts have found is antithetical to an injunction.

> ### D.       The Irreparable Harm Cases Cited By Alpha Founders Are Distinguishable

Founders does not discuss the cases it cites in its short irreparable harm section.  (Pl. Mem. at 9-10.)  With good reason, since many involve situations where, unlike here, a showing was made that money damages could not compensate for the expected loss.  In *Tom Doherty Associations v. Saban Entertainment, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995), the Second Circuit upheld a finding of irreparable harm when the plaintiff was threatened with the loss of a license for children's cartoon characters.  The Court held that "[w]here the availability of a product is essential to the life of a business or increases business of the plaintiff beyond sales of that product . . . the damages caused by the loss of the product will be far more difficult to quantify than where sales of one of many products is the sole loss."  Similarly inapposite is *Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 254-55 (2d Cir. 1989), where the Court preliminarily enjoined a proposed acquisition that would violate Section 7 of the Clayton Act.

Here, Founders does not make analogous arguments that the merger will result in a future loss of business or the inability to compete in an industry.  Rather, Founders' only alleged injuries are pure money damages.  (Compl. 9, ¶ 33; Pl. Mem. 1, 6.)

## IV.     THE BALANCE OF HARDSHIPS WEIGHS HEAVILY IN MAGELLAN'S FAVOR

To demonstrate that the balance of hardships tips in its favor, a movant must show that the harm it would suffer absent the relief sought is substantially greater than the harm its opponent would suffer if relief was granted.  *See Buffalo Forge*, 638 F.2d at 569.  The interests

of the public is a factor to be considered on an application for a preliminary injunction. *See*

*Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980) (per curiam).

Here, Founders makes a cursory less-than-one-page argument in its memorandum of law

on the balance of equities. (Pl. Mem. 10-11.) In fact, granting an injunction will result in a

variety of harms, but only to the businesses of the companies that are involved in the merger or

to their plan enrollees.

The public will be in danger of being directly harmed in the event that this Court issues a

preliminary injunction. The enrollees of both AlphaCare NY and SWH NY plans tend to be

extremely vulnerable – the elderly, frail and disabled who receive medical care at home.

Pursuant to DOH regulations, these plan enrollees were mailed notices of the pending merger

after the merger was approved at the October 6, 2017 Board meeting. (Como Decl. ¶¶ 24-25.)

The notices inform plan enrollees of their right to choose a new plan in light of the merger. (*Id*.)

If an injunction is entered, it would create substantial confusion for the following reasons:

- AlphaCare NY would need to obtain DOH regulatory approval to undo the notice process.

- New notices to plan members would need to be issued, which would require prior DOH approval. It will be difficult to accomplish this in a timely manner.

- Mailing out new notices would create mass confusion for the over 4,000 members of AlphaCare NY who now believe that they are moving to a new plan effective January 1, 2018.

An injunction would also impact the many providers – mostly home health care agencies

– who serve the AlphaCare NY members. The DOH requires that AlphaCare NY and SWH NY

each inform their providers about the pending merger. Those providers are in the process of re-

configuring their claims systems to submit bills for services effective January 1, 2018. An

injunction will undoubtedly confuse those providers and may disrupt their ability to provide and

bill for services to the Medicaid members.

AlphaCare NY is also at substantial risk of suffering a loss of plan participants who may be confused about the conflicting merger notices and choose to enroll in other plans. This will negatively impact AlphaCare NY's already shaky finances given that the company has lost money every year it has operated. (Peary Decl. ¶¶ 15-25.) That harm will also be irreparable since it will be difficult, if not impossible, to determine which plan members left AlphaCare NY due to confusion over the inconsistent notices.

On the other hand, Founders has failed to point to any immediate harm to itself or the public if the merger moves forward. Like its pending New York State Court Action, Founders' lawsuit seeks compensation for the alleged decrease in value of common stock, which is a classic case for money damages.

## V. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM BECAUSE THE MERGER WAS ENTIRELY FAIR

Even if this Court finds that Plaintiff established irreparable harm, Founders cannot demonstrate a likelihood of success on the merits of its breach of fiduciary duty claim.[1]

### A. The Approved Merger Was The Product of a Fair Process; Founders' Directors Chose Not to Participate In That Process

The "concept of fairness has two basic aspects: fair dealing and fair price." *Weinberger v. UOP*, 457 A.2d 701, 711 (Del. 1983). Fair dealing "embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained." *Id.* Fair price "relates to

---

[1]  Under both the Stockholder Agreement and the "internal affairs" doctrine, these merit claims are governed by Delaware law. Paragraph 18.2 of the Stockholder Agreement states that "This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law." (Pl. Mot. Ex. F at 24.) The "internal affairs" doctrine generally requires that the law of the state of incorporation govern allegations of director or officer breaches of fiduciary duty owed to the corporation and its shareholders. *See Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980). Further, Founders does not dispute that Delaware law should govern the substantive issues here. (Pl. Mem. at 7.)

the economic and financial considerations of the proposed merger, including all relevant factors:
assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or
inherent value of a company's stock." *Id*.  Although the two aspects may be examined
separately, "the test for fairness is not a bifurcated one as between fair dealing and price.  All
aspects of the issue must be examined as a whole since the question is one of entire fairness." *Id*.
Additionally, "perfection is not possible, or expected . . . ." *Id.* at 709 n.7.

Here, the merger, the valuation of the enterprise for purposes of merger consideration,
and the fairness opinion were products of Board deliberations at the September 27, 2017 and
October 6, 2017 meetings.  The Founders Directors were given notice of the potential merger, a
summary of the transaction that included methodologies for establishing the enterprise value, and
the proposed engagement of Mercer Capital to render a fairness opinion prior to the September
27, 2017 meeting, where the proposed Agreement and Plan of Merger for the transaction and the
engagement of Mercer Capital were discussed, vetted and initially approved.  (Como Decl. ¶¶ 4-
11.)  The Founders Directors did not object to the proposed merger or the engagement of Mercer
Capital, or even ask for additional information about the planned merger.  They merely abstained
from voting on any of the merger process items.  (*Id*. ¶¶ 9-11.)

On October 4, 2017, the Founders Directors received the agenda and materials for the
October 6, 2017 meeting, which included final approval of the Agreement and Plan of Merger
and consideration of the Mercer Capital fairness opinion.  (*Id*. ¶¶ 12-14.)  The Founders
Directors did not seek more information or ask for an adjournment of the meeting.  They did not
attend the meeting, even though one Director (David Harrington) accepted the calendar
invitation.  (*Id*.)

Founders makes no attempt to explain why the process to approve the merger was not

fair.  Its papers do not discuss what actually transpired at the Board meetings.  In an attempt to

convince the Court that an injunction is needed to prevent the Board from approving a merger,

Founders' moving papers do not even disclose the October 6, 2017 Board meeting in which the

merger was finally approved.  The process by which the Board received information about the

proposed merger, including the Mercer Capital fairness opinion, was fair and consistent with the

Stockholder Agreement.

**B.      Rather Than Challenge the Independent Mercer Capital Fairness Opinion, Founders Relies Upon It**

A Board's receipt of a fairness opinion from an independent financial advisor typically

supports an inference that the Board acted properly when deciding whether to proceed with a

transaction.  *See, e.g.*, *In Re Alloy*, No. 5626-VCP, 2011 Del. Ch. LEXIS 159, at \*35 (Del. Ch.

Oct. 13, 2011).

Here, the AlphaCare Holdings Board obtained a fairness opinion prepared by Mercer

Capital, an independent and disinterested third party.  According to the fairness opinion:

> Mercer Capital is providing this fairness opinion in connection with the [merger] and will receive a fee for such services, *which is not contingent upon the conclusion of our analysis.*  Within the prior three years, Mercer Capital has not been engaged by AlphaCare, Holdings, SWH, SHH or any affiliates of the named   companies.

(Pl. Mem. Ex. I at 3 (emphasis added)).  Founders does not dispute the independence of this

fairness opinion.  Nor does it dispute the substantive financial analysis of the fairness opinion

itself.  In fact, Founders relies on the fairness opinion in determining its monetary damages.  (Pl.

Mem. 5-6; Compl. ¶ 33.)

The independent opinion supporting the fairness of the merger to the common

shareholder refutes any suggestion that Founders has a likelihood of success on the merits.

When directors rely in good faith on outside experts, such as in the context of a fairness opinion,

those directors are "fully protected from liability under [Delaware General Corporate Law] § 141(e)." *See Koehler v. NetSpend Holdings, Inc.*, No. 8373-VCG, 2013 Del. Ch. LEXIS at *57 n. 211 (Del. Ch. May 31, 2013).  Section 141(e) of Delaware's corporation law provides that directors are protected from a breach of the duty of care "when the directors reasonably believe the information upon which they rely has been presented by an expert 'selected with reasonable care' and is within that person's professional or expert competence." *Cresent/Mach I Parners, LP v. Turner*, 846 A.2d 963, 985 (Del. Ch. 2000).  Although Section 141(e) is not a complete defense, "reasonable reliance upon expert counsel is a *pertinent* factor in evaluating whether corporate directors have met a standard of fairness in their dealings with respect to corporate powers." *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1142 (Del. Ch. 1994), *aff'd*, 663 A.2d 1156 (Del. 1995) (emphasis added).

Here, the AlphaCare Holdings Board properly relied on an outside fairness opinion that the proposed transaction was fair to all shareholders.  The Founders Directors were aware of this opinion.  The engagement of Mercer Capital was approved at the September 27, 2017 Board meeting which they attended.  (Como Decl. ¶¶ 4-11.)  Moreover, the agenda for the October 6, 2017 Board meeting reflected that the Mercer Fairness Opinion would be discussed at that meeting.  (*Id.* ¶ 12.)  If the Founders directors had an issue with this independent fairness opinion, they could have objected to the engagement of Mercer Capital on September 27, 2017 or attended the October 6, 2017 meeting where it was discussed and was relied upon by the Board to approve the merger.  They did not attend that meeting or object in any way to this opinion, which concludes that the merger transaction is appropriate for all shareholders.

### C.   The Merger Will Increase the Value of the Common Stock Founders Claims to Own, Thereby Benefiting Founders

Plaintiff incorrectly alleges that the merger will "result[] in a transfer of value from

Founders to Magellan of approximately $10 million." (Compl. ¶ 33.)  While Founders correctly

asserts that the percentage of common stock it still claims to own will decrease from 16.1% to

2.5% as a result of the merger, that does not equate to a loss of value.  In fact, Founders'

common shares will lose no value because they currently have no value.[2]  As was explained to

the AlphaCare Holdings Board in the Summary of Proposed Transaction Document provided in

advance of the September 27, 2017 Board meeting, the common stock of AlphaCare Holdings

currently does not have any value under established valuation methodologies.  (Tcherepnin Decl.

Ex. A.)  The reason for this is that Magellan's preferred stock investment of $65.5 million plus

$9.5 million accrued dividends (totaling $75 million) have priority over the common stock and

exceeds the actual enterprise value of AlphaCare Holdings, leaving nothing for the common

shareholders.  That is not surprising given that AlphaCare NY lost over $31 million since the

start of 2014.  (Peary Decl. ¶¶ 15-25.)



---

[2]    The Tcherepnin Declaration discusses the way to calculate the value of common stock that Founders claims
to own.

[3]

23

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████

░░░░░░████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

████████████████████████░  ███████████████████████████

██████████████████████████████████████

In short, Founders will not succeed on the merits of its claim that the common stock it asserts it owns will decrease in value as a result of the merger.

## CONCLUSION

In light of the foregoing, Defendant Magellan respectfully requests that the Court deny Plaintiff's application for a preliminary injunction in its entirety.

---

[4]   Under AlphaCare Holdings' Certificate of Incorporation in effect for all relevant times, the assets of the corporation after payment of the preferred shares are divided up among the stockholders according to their respective ownership interests across all classes of stock.

Dated:  New York, New York
       November 9, 2017

KELLEY DRYE & WARREN LLP


By: /s/ Jonathan K. Cooperman
     Jonathan K. Cooperman
     Sojin Yoon
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7987

*Attorneys for Defendant*
*Magellan Health, Inc.*