UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALPHA FOUNDERS HOLDING, LLC,                       :
                                                   :
                              Plaintiff,           :
                                                   :       **OPINION & ORDER**
                 -against-                          :       17-CV-6225 (DLI)(RER)
                                                   :
MAGELLAN HEALTH, INC.,                             :
                                                   :
                              Defendant.           :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

On October 25, 2017, Alpha Founders Holding, LLC ("Plaintiff" or "Founders") filed the instant action in this Court, based on diversity jurisdiction, alleging that Magellan Health, Inc. ("Defendant" or "Magellan") breached its fiduciary duties of loyalty and good faith in taking steps to effectuate the merger of AlphaCare NY and Senior Whole Health NY ("SWH NY"), and seeking to preliminarily enjoin the merger. *See* Complaint ("Compl."), Dkt. Entry No. 1; Mem. of Law in Supp. of Temporary Restraining Order and Preliminary Injunction ("Pl.'s Mem."), Dkt. Entry No. 3-2; Reply Mem. of Law ("Reply"), Dkt. Entry No. 7. Defendant opposes Plaintiff's motion for equitable relief. *See* Def.'s Mem. of Law in Opp'n ("Opp'n"), Dkt. Entry No. 11. On October 26, 2017, following oral argument, the Court denied Plaintiff's request for a temporary restraining order ("TRO"). *See* TRO Hr'g Tr., Dkt. Entry No. 10. On December 4, 2017, the Court held oral argument on Plaintiff's motion for a preliminary injunction ("PI"). For the reasons set forth below, this case is dismissed without prejudice.

## BACKGROUND

This is the third lawsuit regarding the events preceding the merger of two healthcare companies. In 2012, the Founders established AlphaCare NY to provide long-term healthcare service to poor, chronically ill and disabled New Yorkers. Compl. at ¶ 12. Simultaneously, the

Founders formed AlphaCare Holdings, LLC, which owned all of AlphaCare NY's stock. *Id.* In August 2013, following its receipt of a New York Health Maintenance Organization ("HMO") license, AlphaCare NY began enrolling plan members. *Id.* at ¶ 13. In February 2013, Defendant approached Plaintiff about investing in AlphaCare NY. *Id.* at ¶ 15.

In the following months, Defendant made a series of capital investments in AlphaCare NY, and, in exchange, it received a preferred equity position in AlphaCare NY. *Id.* at ¶¶ 15-16; *See also* Declaration of Matthew Peary ("Peary Decl."), Dkt. Entry No. 13, at ¶¶ 3-5. Effective December 31, 2013, AlphaCare Holdings, LLC merged with AlphaCare Holdings, Inc., and the Founders transferred their shares from AlphaCare Holdings, Inc. to Alpha Founders Holding, LLC. Peary Decl. at ¶ 6.

On December 31, 2013, Magellan, Founders, AlphaCare Holdings, Inc., and each of the five individual founders executed a stockholder agreement (the "Stockholder Agreement"). *Id.* at ¶ 7; Ex. F ("Stockholder Agreement") to Declaration of James Beha ("Beha Decl."), Dkt. Entry No. 3. The Stockholder Agreement created a five-member board of directors for AlphaCare Holdings, Inc., with three seats appointed by Defendant and two seats appointed by Founders, so long as Founders retained at least ten percent of the total issued and outstanding AlphaCare Holdings, Inc. common stock. Peary Decl. at ¶ 8; Compl. at ¶ 18. The Stockholder Agreement also provided for an increase in the size of the AlphaCare Holdings, Inc. board of directors upon the consent of Magellan or the majority of the then outstanding shares of preferred stock. Peary Decl. at ¶ 9; Stockholder Agreement at § 1.1. As of the filing of the instant lawsuit, Founders retained more than ten percent of AlphaCare's common stock, and, thus, held two seats on the AlphaCare Holdings, Inc. board. *See* Compl. at ¶ 19.

Under Section 12 of the Stockholder Agreement, Defendant had the option to purchase all of Founders' AlphaCare Holdings, Inc. common stock any time after January 1, 2017 at an agreed value (the "Agreed Value"), defined as "equal to seven (7) times the Company's EBITDA determined on a rolling twelve-month basis as of the end of the immediately preceding fiscal quarter." Peary Decl. at ¶ 27. Defendant notified Founders on January 3, 2017 that it was exercising its option under Section 12 of the Stockholder Agreement. *Id.* at ¶ 28. The Agreed Value of the option was $0 because, for the preceding fiscal year ending November 30, 2016, AlphaCare Holdings, Inc.'s EBITDA was negative. *Id.* at ¶ 29. The Founders objected to the timeframe used for Magellan's calculation of the Agreed Value, and Magellan submitted a revised computation and supporting documentation for the rolling twelve-month period ending December 31, 2016. *Id.* at ¶ 30. Founders did not object to the revised computation or deliver a "Disagreement Notice," and, therefore, the offer was deemed accepted. *Id.* at ¶ 31. As a result, Defendant contends that Plaintiff was obligated to sell its shares at the Agreed Value within twenty days of the deemed acceptance. *Id.*

Plaintiff refused to turn over its shares, and, on May 3, 2017, Defendant brought suit in Delaware Chancery Court seeking specific performance of the Stockholder Agreement. *See Magellan Healthcare, Inc. F/K/A Magellan Behavioral Health, Inc. v. Alpha Founders Holding, LLC*, Case No. 2017-0336 (Del. Ch. May 3, 2017) (the "Delaware action"), Ex. 1 to Declaration of Jonathan K. Cooperman ("Cooperman Decl."), Dkt. Entry No. 12-1. On June 16, 2017, Plaintiff brought suit in New York Supreme Court, Kings County, alleging breach of fiduciary duty, unjust enrichment, and corporate waste. *See Alpha Founders Holding, LLC v. Magellan Behavioral*

*Health, Inc.*, Index No. 506478/2017 (Kings Cnty. Sup. Ct. June 16, 2017) (the "Supreme Court action"), Ex. 2 to Cooperman Decl., Dkt. Entry No. 12-2.[1]

On September 22, 2017, AlphaCare NY and AlphaCare Holdings, Inc.'s corporate secretary sent notice to the companies' board members,[2] including Founders Joel Landau and David Harrington, regarding a September 27, 2017 board meeting to discuss a proposed merger between AlphaCare NY and SWH NY. *See* Declaration of Anthony Como ("Como Decl."), Dkt. Entry No. 14, at ¶¶ 5-6; Ex. A to Como Decl. The materials distributed on September 22, 2017 included a summary of the proposed transaction, the valuations of both companies, an agenda item about the issuance of 2,000,000 additional shares of AlphaCare Holdings, Inc. stock to SWH NY, and a draft engagement letter with Mercer Capital, who was to provide an independent fairness opinion regarding the proposed merger. Como Decl. at ¶ 6. On September 26, 2017, Mr. Landau emailed Magellan's executive assistant, Kim Kennedy, requesting "the Summary of Proposed Transaction regarding proposed Agreement and Plan of Merger with Senior Whole Health of New York, Inc." *Id.* at ¶ 7; Ex. B to Como Decl. Ms. Kennedy responded that the summary of the proposed merger was attached to the meeting announcement, and again forwarded the requested materials. Como Decl. at ¶ 8.

All five board members attended the September 27, 2017 meeting via telephone. *Id.* at ¶ 9. The proposed merger was discussed, conditionally approved, and a resolution was passed confirming the board's conditional approval of the merger. *Id.*; Reply at 4; Ex. B to Declaration

---

[1]     On November 20, 2017, the New York Supreme Court granted Defendant's motion to compel arbitration under the Stockholder Agreement, holding that "the claim for breach of fiduciary duty is one that is exclusively extrinsically connected to the Stockholder Agreement." *See Alpha Founders Holding*, Index No. 506478/2017, Dkt. Entry No. 21, at 5.

[2]     The board membership of AlphaCare NY and AlphaCare Holdings, Inc. is identical.

of David Harrington ("Harrington Decl."), Dkt. Entry No. 18.  The three Magellan board members voted to approve the merger, and the two Founder's board members, Messrs. Landau and Harrington, abstained from voting.  Como Decl. at ¶ 10.

On Wednesday October 4, 2017 at 9:42 a.m., the board members were given email notice of a special meeting scheduled for 8:30 a.m. on October 6, 2017 to: (1) consider a "request for approval of the fairness opinion from Mercer Capital . . . regarding the issuance of the Corporation new Common Stock to SWH Holdco in connection with the Subsidiary Merger"; (2) "[f]inal approval of the Agreement and Plan of Merger" between SWH NY and AlphaCare NY; and (3) ratify the shareholder approval of the Agreement and Plan of Merger between SWH NY and AlphaCare NY.  Como Decl. at ¶ 12; Ex. C to Como Decl.  The notice included copies of the resolutions to be ratified and a revised Agreement and Plan of Merger that included changes requested by the New York Department of Health ("DOH").  *Id.* at ¶ 13.  The notice did not include a copy of the fairness opinion.  Mr. Harrington accepted the meeting invitation October 6, 2017. *Id.* at ¶ 14; Ex. D to Como Decl.

At 5:25 p.m. on October 4, 2017, Mr. Landau wrote to Mr. Como that he "can't do that day it's a holiday for me."  *See* Como Decl. at ¶ 14; Ex. E to Como Decl.  Mr. Landau  is an Orthodox Jew[3] who observes Sukkot, which began at sundown on October 4 and ran through sundown on October 8.  Reply at 5.  Though Mr. Landau did not explicitly request that the October 6, 2017 meeting be rescheduled, Plaintiff claims that "Magellan refused to re-schedule the meeting to accommodate the Founder's religious observance."  *Id.*  Mr. Como responded to Mr. Landau that

---

[3]     Plaintiff notes that "one of Founders two board designees [ ] is an observant Orthodox Jew," and "most of Founders' other investors . . . are also Orthodox Jews."  Reply at 5.

the meeting would be held as scheduled because the company was "under a NY DOH deadline." Ex. E to Como Decl.

Although Mr. Harrington accepted the email invitation for the October 6, 2017 meeting, only the three Magellan directors attended the meeting. Como Decl. at ¶ 15. The board resolved to accept Mercer Capital's fairness opinion, which, by that date, was a verbal opinion finding the proposed merger was fair to AlphaCare Holdings shareholders from a financial viewpoint. *Id.* at ¶ 16. The board also approved the Agreement and Plan of Merger with the DOH's modifications, and ratified the shareholder approval of the Agreement and Plan of Merger. *Id.* at ¶ 17. Thereafter, notice of the merger was given to AlphaCare NY's plan members, who, under DOH rules, had until December 5, 2017 either to choose a new plan or remain with AlphaCare NY. *See* Ex. B to Beha Decl.; Como Decl. at ¶¶ 24-26.

A third board meeting was scheduled for October 23, 2017. The agenda for that meeting included: (1) AlphaCare NY's board authorizing and directing the company to execute the Agreement and Plan of Merger approved on October 6, 2017; (2) reducing AlphaCare NY's board from five members to three; (3) approving AlphaCare Holdings' Sixth Amended and Restated Certificate of Incorporation; (4) increasing the number of directors on AlphaCare Holdings' board; (5) issuing additional AlphaCare Holdings' common stock; (6) the subsidiary merger; and (7) restructuring the board of directors of the subsidiary. Como Decl. at ¶ 19. According to Plaintiff, notice was given for the October 23 meeting on "Friday, October 20, 2017, minutes before the state of the Jewish Sabbath." Reply at 6. Messrs. Landau and Harrington attended the October 23, 2017 meeting, and Mr. Harrington asked for the meeting to be adjourned so he could review the board materials and make a recommendation to the minority shareholder, Founders.

Como Decl. at ¶ 21. The board agreed to adjourn and continue the meeting on October 25, 2017. *Id.* at ¶ 22.

On October 25, 2017, by a vote of three Magellan directors in favor and two Founders directors against, the board approved the measures set forth in the October 25, 2017 agenda to implement the terms of the merger approved on October 6, 2017. *Id.* at ¶ 23.

Also on October 25, 2017, Plaintiff filed the instant lawsuit pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332, seeking to enjoin Magellan from taking further steps to implement the merger. *See generally*, Compl.; Pl.'s Mem.; Reply at 6. Plaintiff alleges that it has shown a likelihood of success on the merits because Defendant has engaged in self-dealing by approving a transaction that is unfair to the Founders as minority shareholders. Pl.'s Mem. at 7-9. Plaintiff further alleges that it will suffer unspecified irreparable harm if the merger is permitted to go through and that the equities tip in favor of an injunction. *Id.* at 9-11.

On October 26, 2017, the Court held a hearing to discuss the issuance of a TRO. *See generally*, TRO Hr'g Tr, Dkt. Entry No. 10. The Court questioned whether Plaintiff had joined all necessary parties in the Complaint, and why Plaintiff had not sought to enjoin the September 27, 2017 vote to conditionally approve the merger, or the October 6, 2017 meeting finally approving the merger and implementing the plan of merger. *Id.* at 33:20-21, 43:4-46:20. The Court denied Plaintiff's motion for a TRO and requested additional briefing from the parties. *Id.* at 47:7-9.

On November 9, 2017, Defendant filed its opposition to Plaintiff's motion for a PI. Defendant contends that Plaintiff failed to join necessary parties, and that the Court lacks subject matter jurisdiction over this dispute because the joinder of those necessary parties destroys diversity. Opp'n at 3-4. Defendant also contends that: (1) Plaintiff lacks standing because it does not rightfully own shares of AlphaCare Holdings, Inc., which were purchased by Defendant under

Section 12 of the Stockholder Agreement; (2) Plaintiff fails to demonstrate that it will suffer irreparable injury as a result of the merger, which is evidenced by Plaintiff providing a demand for monetary damages; (3) the equities tip in favor of denying the PI, since Defendant would have to notify plan enrollees of the injunction, possibly causing confusion and decreased enrollment; and (4) Plaintiff is not likely to succeed on the merits because the merger was approved by the board and supported by an independent fairness opinion. *See generally*, *Id.*

On November 22, 2017, Plaintiff filed its reply brief in further support of its PI motion. In its Reply, Plaintiff argues that: (1) its claim is properly brought as a direct claim against Defendant; (2) there are no necessary parties that were not joined; (3) it has standing since it still possesses AlphaCare Stock; (4) and injunctive relief is appropriate because Plaintiff will suffer irreparable harm, cannot be adequately compensated by money damages, will likely succeed on the merits, and the balance of equities tips in its favor. *See generally*, Reply. The parties also submitted additional briefing on the issue of necessary parties. *See* Pl.'s Supplemental Br., Dkt. Entry No. 25; Def.'s Supplemental Br., Dkt. Entry No. 24. On December 4, 2017, the Court heard oral argument on the PI motion, and orally dismissed the case for nonjoinder with this opinion to follow. For the reasons set forth below, this case is dismissed without prejudice for failure to join a necessary party. The motion for a preliminary injunction is denied as moot in light of the dismissal of the Complaint.

## **DISCUSSION**

### I. **Preliminary Injunction Standard**

A party seeking a preliminary injunction must establish: "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of hardships tipping

decidedly in favor of the moving party." *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (citation and internal quotation marks omitted). "If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (citation omitted); *A.X.M.S. Corp. v. Friedman*, 948 F. Supp.2d 319, 331-32 (S.D.N.Y. 2013) (citation and internal quotation marks omitted) ("[I]f the harm can be remedied in money damages[, that] is the antithesis of irreparable harm, and such a fact requires that the Court not find an irreparable injury."). Moreover, "a mere 'difficulty' in calculating damages is [not] sufficient to establish irreparable harm." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010); *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) ("[T]he general proposition [is] that irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial.").

Preliminary injunctive relief is inappropriate where the alleged irreparable harm has already occurred. *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (emphasis original) ("The standard for preliminary injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already have occurred."); *Berlent v. Focus Features, LLC*, 2006 WL 1594478, at *2 (S.D.N.Y. June 8, 2006) (denying preliminary injunction where "the harm Plaintiff [sought] to prevent ha[d] already occurred"); *T & L Redemption Ctr. Corp. v. Phoenix Beverages, Inc.*, 752 F. Supp. 64, 67 (E.D.N.Y. 1989) (citing *Lovell v. Brennan*, 728 F.2d 560, 562 (1st Cir. 1984)) ("Since injunctive relief is intended to prevent future irreparable harm, where . . . the harm to the moving party has already occurred, such relief is inappropriate.").

## II.    Analysis

### A.  Subject Matter Jurisdiction and Joinder of Necessary Parties

As a threshold matter, the Court must consider whether it has subject matter jurisdiction over Plaintiff's claim.  While Plaintiff asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1332, the diversity statute, "'if complete diversity is lacking[,] the federal district court does not have subject matter jurisdiction over the action, and must dismiss it.'"  *Parekh v. Economy Premier Assurance Co.*, 2012 WL 1020426, at *3 (E.D.N.Y. Jan. 17, 2012) (quoting *Deveer v. Gov't Emps. Ins. Co.*, 2008 WL 4443260, at *5 (E.D.N.Y. Sept. 26, 2008)).  Complete diversity means that "each plaintiff's citizenship must be different from the citizenship of each defendant."  *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009).  For the purposes of diversity, an LLC's citizenship is based on the citizenship of each of its members.  *Agility Logistics Corp. v. Elegant USA, LLC*, 2009 WL 3094898, at *1 (E.D.N.Y. Sept. 25, 2009) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) ("[T]he citizenship of an artificial entity . . . depends on the citizenship of all the members, the several persons composing such association, [or] each of its members.")).

Rule 19 of the Federal Rules of Civil Procedure ("FRCP") addresses the joinder of necessary parties.  *See* Fed. R. Civ. P. 19.  Rule 19(a) provides that a party is necessary where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  When a necessary party has not been joined as a party, "the court must order that person be made a party." Fed. R. Civ. P. 19(a)(2).

However, "a diversity-destroying party joined after the action is underway may catalyze loss of jurisdiction." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) (citation omitted); *See also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 108 (1968) (noting that joinder of a non-diverse defendant under Rule 19(a) destroys jurisdiction). In general, courts prefer to avoid dismissing an action on joinder grounds, and, therefore, "'very few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'" *Am. Home Assurance Co. v. Babcock & Wilcox Co.*, 2007 WL 4299847, at *2 (E.D.N.Y. Dec. 6, 2007) (quoting *Jaser v. New York Property Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987)).

If a party is necessary, the court next must determine whether the party is "indispensable." *Viacom*, 212 F.3d at 725. In determining if a party is indispensable, the court should consider:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.* (quoting Fed. R. Civ. P. 19(b)). If a party is indispensable, the court must dismiss the action. *Id.* (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc.*, 102 F.3d 677, 681-82 (2d Cir. 1996)).

Defendant contends that Plaintiff has created an illusion of diversity jurisdiction by failing to join: (1) AlphaCare Holdings, Inc., the corporation in which Founders is a shareholder, which allegedly is not receiving fair value in the merger, and a party to the Stockholder Agreement; (2) AlphaCare NY, one of the merging entities, which is owned by Plaintiff and Defendant; and

(3) SWH NY, the other merging entity, which is wholly owned by Defendant. *See generally*, Opp'n. Each of these three entities is a New York citizen (*Id.* at 8), and joinder of any of them as a defendant would destroy diversity since Founders is also a citizen of New York (Compl. at ¶ 6). In opposition, Plaintiff argues that none of these entities is necessary or indispensable since "Founders is not seeking to set aside [the] merger agreement between AlphaCare [NY] and SWH NY." Reply at 7.

### 1. AlphaCare Holdings, Inc.

Noticeably absent from Plaintiff's initial briefing is any discussion of why AlphaCare Holdings, Inc. is not a necessary party. AlphaCare Holdings, Inc. has had significant involvement in the merger: its board of directors, on two separate occasions, voted to approve an Agreement and Plan of Merger between AlphaCare NY and SWH NY, and issued additional stock pursuant to the Stockholder Agreement. *See* Como Decl. at ¶ 17.

In order to determine whether AlphaCare Holdings, Inc. is a necessary party, the Court first must assess whether Plaintiff's claim for breach of fiduciary duties is direct or derivative. It is well settled that an entity who has derivative claims brought on its behalf is a necessary party. *See, e.g.*, *Serova v. Teplen*, 2006 WL 349624, at *10 (S.D.N.Y. Feb. 16, 2006) (citation and internal quotation marks omitted) ("[A] shareholder derivative action . . . cannot proceed in the absence of the corporation[ ] whose rights are being asserted.")).

The parties disagree as to the nature of Plaintiff's claim. Defendant contends that the Founders are suing Magellan for a dilution of the Founder's AlphaCare Holdings, Inc. stock, and, therefore, its claim is derivative. *See* Opp'n at 8 (citing *El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248, 1261 (Del. 2016) (citation omitted) ("[B]ecause such claims 'naturally assert that the corporation's funds have been wrongfully depleted, which, though harming the corporation

directly, harms the stockholders only derivatively so far as their stock loses value.'")).  In opposition, Plaintiff argues that, under Delaware law, a minority stockholder's claim against a controller for breach of fiduciary duty is a direct claim.  *See* Reply at 6-7 (citing *Odyssey Partners v. Fleming*, 1998 WL 155543, at *3 (Del. Ch. Mar. 27, 1998)).

Plaintiff's reliance on *Odyssey* is misplaced.  While it is true that *Odyssey* held that a suit "challenging a cash out merger with a controlling stockholder on grounds of unfair dealing, illegality or fraud" can be maintained individually, rather than holding that plaintiffs' claims were direct, the *Odyssey* court reserved the decision until trial.  *Odyssey*, 1998 WL 155543, at *3-4 (citations omitted) ("Ultimately, whether plaintiffs are entitled to recover in their individual capacities will turn on the nature of the claim established at trial.").  Furthermore, *Odyssey* pre-dates the Delaware Supreme Court's decision in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, which established a two-part test for determining whether a claim is direct or derivative.  *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

Under *Tooley* and its progeny, courts ask two questions in determining whether a claim is derivative or direct: (1) "[w]ho suffered the alleged harm—the corporation or the suing stockholder individually"; and (2) "who would receive the benefit of the recovery or other remedy."  *F5 Capital v. Pappas*, 856 F.3d 61, 72 (2d Cir. 2017) (internal quotation marks omitted) (citing *Tooley*).[4] However, as one court put it: "[I]n a case challenging a dilutive stock issuance[,] the *Tooley* questions can be answered with 'either' or 'both'."  *Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 661 (Del. Ch. 2013).

---

[4]     Put differently, "'the test may be stated as follows: Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?'" *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1138 n.68 (Del. 2016) (quoting *Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del. Ch. 2004)).

Plaintiff alleges that Magellan breached its duties of good faith and loyalty by engaging in self-dealing and "attempting to force the merger of AlphaCare NY with SWH NY." Compl. at ¶¶ 37-40. In essence, Plaintiff complains that the actions leading up to the merger disadvantage Founders because the issuance of two million new AlphaCare Holdings, Inc. shares to SWH NY and the changes to the board will dilute Founders' ownership, control, and stock value. *Id.* at ¶¶ 28, 33.

Equity dilution claims generally are considered derivative claims under Delaware law, but a direct claim exists in "limited circumstances involving controlling shareholders" where someone: (1) "owns more than 50% of the voting power," or (2) "exercises control over the business and affairs of the corporation." *See F5 Capital*, 856 F.3d at 73 (internal quotation marks omitted) (quoting *Feldman v. Cutaia*, 956 A.2d 644, 657 (Del. Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008) ("Feldman I"); *Feldman v. Cutaia*, 951 A.2d 727, 729 (Del. 2008) ("Feldman II")).

Here, since Defendant is a controlling shareholder, Plaintiff's dilution claim is direct. *See Feldman II*, 951 A.2d at 729; *CMS Investment Holdings, LLC v. Castle*, 2015 WL 3894021, at *8 (Del. Ch. June 23, 2015) (citation omitted) ("Moreover, even in cases involving derivative claims, the same claims can have direct aspects when the allegedly faithless transaction involves an extraction from one group of stockholders, and a redistribution to another, of 'a portion of the economic value and voting power embodied in the minority interest.'"); *Feldman I*, 956 A.2d at 657; *See also Brinckerhoff*, 152 A.3d at 1263 (describing the "dual-nature" of claims where a majority stockholder engages in a transaction that increases his ownership while decreasing the minority shareholder's value and voting power); *Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006); Compl. ¶ 38 ("Founders . . . assert a direct claim for breach of fiduciary duty."). Since Plaintiff's claim is direct, AlphaCare Holdings, Inc. is not a necessary party. *See, e.g., Bartfield*

*v. Murphy*, 578 F. Supp.2d 638, 650 (S.D.N.Y. 2008) (LLC necessary party where derivative claims raised on its behalf); *Teplen*, 2006 WL 349624, at \*10 (citation and internal quotation marks omitted) ("[A] shareholder derivative action . . . cannot proceed in the absence of the corporation[ ] whose rights are being asserted.")).

Setting aside that Plaintiff's claim is direct, the Court still must consider whether it can accord complete relief among the parties in AlphaCare Holdings, Inc.'s absence, and whether AlphaCare Holdings, Inc. has an interest in the litigation such that it would be prejudiced by its absence. Fed. R. Civ. P. 19(a)(1)(B); *Viacom*, 212 F.3d at 724. Even if AlphaCare Holdings, Inc. has an interest in the litigation, it may not be a necessary party, if its interests are adequately represented in the litigation, as courts routinely conclude that a party is not necessary "'if there is another party in the suit with virtually identical interests who would be advancing virtually the same legal and factual positions.'" *See, e.g.*, *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp.2d 251, 258 (S.D.N.Y. 2010) (quoting *Gibbs Wire & Steel Co. v. Johnson*, 255 F.R.D. 326, 329 (D. Conn. 2009) (collecting cases)).

The Court finds that AlphaCare Holdings, Inc. is not a necessary party. First, the Court can accord complete relief among the parties absent AlphaCare Holdings, Inc. Plaintiff does not challenge any actions taken by AlphaCare Holdings, Inc., but rather it challenges the actions taken by Defendant, as a majority shareholder of AlphaCare Holdings, Inc. and AlphaCare NY. PI Hr'g Tr. at 9:15-18 ("[W]hat we have here . . . is Founders trying to ascribe to Magellan a lot of different activities that are actually taking place not at Magellan's level[,] but at company levels below it."); Pl.'s Supplemental Br. at 2 ("Founders does not assert a claim against nor seek any relief from AlphaCare. Nor could it: Magellan, not AlphaCare, owes fiduciary duties to Founders as AlphaCare's controlling stockholder."). Moreover, Plaintiff does not seek to enjoin AlphaCare

Holdings, Inc. from taking any additional steps to consummate the merger, since the only remaining step is AlphaCare NY and SWH NY's execution of the merger agreement when the DOH notice period elapses. PI Hr'g Tr. at 10:11-14 ("The only thing that's left now to do is . . . just sign the merger agreement.").

Second, it is not clear that AlphaCare Holdings, Inc. has any interest in this litigation that would be prejudiced by its absence, or that its absence will subject it to multiple liabilities. Even assuming that AlphaCare Holdings, Inc. does have an interest in this litigation, its interests are adequately represented by Plaintiff and Defendant, who are the only shareholders of AlphaCare Holdings, Inc. *See Gibbs*, 255 F.R.D. at 329 (additional citations omitted) (quoting *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1351 (D.D.C. 1996)) ("'If the nonparties' interests are adequately represented by a[n existing] party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered 'necessary.''"). Since the Court finds that AlphaCare Holdings, Inc. is not a necessary party, the Court need not address whether it is indispensable. *Viacom*, 212 F.3d at 724 (citation omitted) ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).").

### 2. AlphaCare NY and SWH NY

With respect to AlphaCare NY and SWH NY, Defendant contends that they are necessary parties because they are parties to the merger that Plaintiff seeks to enjoin. Opp'n at 7. In support of its argument, Defendant directs the Court to the Second Circuit's decision in *Crouse-Hinds Company v. InterNorth Inc. See Id.* at 8 (citing *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980)). In opposition, Plaintiff argues that the reasoning in *Crouse-Hinds* is inapplicable, since Plaintiff seeks to "prevent Magellan from taking further steps to advance a

merger of AlphaCare [NY] and SWH NY," not to "set aside a merger agreement between AlphaCare [NY] and SWH NY."  Reply at 7-8.

In *Crouse-Hinds*, the Crouse-Hinds Company ("Crouse-Hinds") had agreed to merge with non-party Belden, and InterNorth Inc. ("InterNorth") and then made a tender offer to purchase Belden.  *Crouse-Hinds*, 634 F.2d at 692.  Following additional negotiations between Belden and Crouse-Hinds, the companies modified the merger agreement so that Crouse-Hinds would offer to exchange its stock for Belden stock and then the companies would consummate the merger.  *Id.* at 695.  Crouse-Hinds subsequently sued InterNorth, seeking a PI enjoining InterNorth from obtaining any Crouse-Hinds stock or proxies for Crouse-Hinds votes.  *Id.* at 697.  InterNorth answered the complaint and asserted counterclaims, seeking a PI enjoining Crouse-Hinds from obtaining any Belden stock.  *Id.*  The Second Circuit held that, since the lawsuit challenged the validity of the executed merger agreement between Crouse-Hinds and Belden, Belden was a necessary party.  *Id.* at 701 ("Since there is no question that the Exchange Agreement is a contract that was within the powers of the corporation, and since Belden's rights thereunder would clearly be prejudiced if the relief sought by InterNorth were to be granted, Belden's presence is required.").

The Court is not persuaded that *Crouse-Hinds* is applicable.  *Crouse-Hinds* relied on the existence of an executed merger agreement, and, here, there is no executed merger agreement between AlphaCare NY and SWH NY.  PI Hr'g Tr. at 7:15-16 ("[I]t's not a case where there has been a merger agreement executed that we're seeking to set aside . . . .").  Moreover, Plaintiff very clearly argues that it is not seeking to "set aside [the] merger."  Reply at 7; PI Hr'g Tr. at 8:4-6 ("We're not seeking to set aside any contract under which AlphaCare [NY] has rights.").  Since there is no merger agreement, and Plaintiff is not challenging any of the rights afforded by the

merger agreement, the Court finds that neither AlphaCare NY nor SWH NY is a necessary party under *Crouse-Hinds*.

While there is no executed merger agreement, that does not imply that the merging entities' rights are not at stake here. As Plaintiff conceded at oral argument, since all that remains is for AlphaCare NY and SWH NY to execute the merger agreement, it is the execution of the agreement that Plaintiff wishes to enjoin. PI Hr'g Tr. at 10:11-14 ("The only thing that's left now to do is not something on the Magellan level, it's on the AlphaCare New York level. It's just sign the merger agreement."); Def.'s Supplemental Br. at 2. Therefore, the Court must consider whether it can grant the relief Plaintiff seeks in AlphaCare NY and SWH NY's absence.

The Court finds that SWH NY is not a necessary party. Although SWH NY is one of the parties who will execute the merger agreement, it is Defendant's wholly owned subsidiary. Therefore, it is united in interest with Defendant, and the Court finds that its interests are adequately represented by Defendant, making its joinder not necessary. *See, e.g.*, *SafeNet*, 758 F. Supp.2d at 258 ("Courts often conclude that the suit will not impair or impede an absentee's interests if the absentee's interests are adequately represented by an existing party."). Since SWH NY is not a necessary party, the Court need not address whether it is indispensable. *Viacom*, 212 F.3d at 724.

AlphaCare NY, however, is owned jointly by Plaintiff and Defendant. Compl. at ¶ 17. The Court cannot afford the parties complete relief in its absence because it is AlphaCare NY's actions that Plaintiff seeks to enjoin. PI Hr'g Tr. at 18:14-24 ("Then what you are seeking to enjoin then would be Alpha New York's executing the merger document. […] Because it's not Magellan, it's Alpha New York that has to execute the merger document."). In essence, Plaintiff brings a derivative claim on behalf of AlphaCare NY, which cannot proceed in its absence. *See Serova*,

2006 WL 349624, at *10 (citation and internal quotation marks omitted) ("[A] shareholder derivative action . . . cannot proceed in the absence of the corporation[ ] whose rights are being asserted.")). Moreover, AlphaCare NY has an interest in this litigation in that, if the merger is consummated, AlphaCare NY will cease to exist. *See Mazzio v. Kane*, 2014 WL 2866040, at *4 (E.D.N.Y. June 24, 2014) ("[The absentee] is a necessary and indispensable party because plaintiffs are raising claims that properly belong to [the absentee] […] [and the absentee] is the party harmed by defendant's actions and the party with the right to seek recovery"); PI Hr'g Tr. at 23:21-25 ("But the board representation I don't think is the primary harm, it is the company that we founded . . . will essentially disappear . . . ."). Therefore, the Court finds that AlphaCare NY is a necessary party.

The Court also finds that AlphaCare NY is indispensable. The Court finds that it cannot fashion any form of adequate relief in AlphaCare NY's absence, and a judgment rendered in AlphaCare NY's absence would be inadequate in that it could not prevent the merger of which Plaintiff complains. Finally, Plaintiff has an adequate remedy in Delaware Chancery Court. That is where Defendant initially filed suit in May 2017, and where Plaintiff has agreed to bring its nearly identical fiduciary duty claim, originally brought in New York Supreme Court, following that court's dismissal under the Stockholder Agreement's arbitration clause.[5]

Additionally, although AlphaCare NY is indispensable, it is a resident of New York. As such, its joinder would divest this Court of subject matter jurisdiction under 28 U.S.C. § 1332, and,

---

[5] The Stockholder Agreement states that "any unresolved controversy or claim arising out of or relating to this Agreement[] shall be submitted to arbitration . . . ." Stockholder Agreement at § 18.13(a). The Court notes that the alleged actions taken by Magellan of which Plaintiff now complains appear to arise out of or relate to the Stockholder Agreement. *Compare* Compl. at ¶ 24 (merger will result in "the issuance of additional [AlphaCare Holdings, Inc.] shares") *and Id.* at ¶ 28 (merger "remove[s] Founders' designees from the boards of both AlphaCare [Holdings, Inc.] and AlphaCare NY"), *with* Stockholder Agreement at § 5 ("Each stockholder agrees to vote . . . from time to time and at all times, in whatever manner as shall be necessary to increase the number of authorized shares . . . ."), *and Id.* at §§ 1.1, 1.2 (size of board and board composition).

therefore, joinder of AlphaCare NY is not feasible. Accordingly, the Complaint is dismissed without prejudice. *Viacom*, 212 F.3d at 725 (citing *ConnTech Dev. Co.*, 102 F.3d at 681-82).

### B. Plaintiff's Remaining Arguments

Having dismissed the Complaint for nonjoinder, the Court does not reach the parties' remaining arguments. However, the merits (or lack thereof) of Plaintiff's preliminary injunction motion warrant brief discussion.

A foundational requirement for a preliminary injunction is a threat of imminent irreparable harm for which money damages are inadequate. *Mullins*, 626 F.3d at 55 (emphasis original) ("The standard for preliminary injunctive relief requires a *threat* of irreparable harm, not that irreparable harm already have occurred."); *Friedman*, 948 F. Supp.2d at 331-32 (citation and internal quotation marks omitted) ("[I]f the harm can be remedied in money damages[, that] is the antithesis of irreparable harm."). Here, Plaintiff's claimed irreparable harms are: (1) the issuance of additional AlphaCare Holdings, Inc. stock; and (2) the loss of influence via a loss of board seats. TRO Hr'g Tr. at 20:8-21:9.

Both harms occurred prior to the TRO hearing on October 26, 2017. TRO Hr'g at 29:20-24 ("And then last Friday, we find out, we are going to take steps on Monday, that are going to move this forward and are going to have you be diluted on the Board. Have more shares issued. That all happened yesterday."). Defendant subsequently reinstated Plaintiff's two seats on the AlphaCare Holdings, Inc. board, and also created two Founders seats on the SWH NY upon the consummation of the merger. Opp'n at 15. Therefore, all that remains is Plaintiff's dilution claim, which it has alleged (and conceded at oral argument) is compensable with money damages. *See* Compl. at ¶ 4 (alleging that the merger "will result in a transfer of value from Founders to Magellan of approximately $10 million"); Prayer for Relief; PI Hr'g Tr. at 25:7-8 (Mr. Beha: "Your Honor,

if there is no preliminary injunction, we can, in the alternative, seek money damages."). Even assuming Plaintiff joined all necessary parties and this Court had jurisdiction, Plaintiff is not entitled to the relief it seeks.

## **CONCLUSION**

For the reasons set forth above, this action is dismissed without prejudice for failure to join a necessary party.

SO ORDERED.

Dated: Brooklyn, New York                       _____/s/_____
       March 9, 2018                             DORA L. IRIZARRY
                                            Chief Judge